DOUGLAS S. H. ANDERSON & others[1] vs. PHOENIX
INVESTMENT COUNSEL OF BOSTON, INC. & others.[2]

Essex.   March 1, 1982. — October 1, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Res Judicata.   Limitations, Statute of.   Consumer Protection,* Res judicata.

General Laws c. 93A, § 9 (8), did not preclude the defense of res judicata
in an action under the Consumer Protection Act, where the plaintiffs
had previously brought an action in a United States District Court
based on essentially the same facts, where the Federal court had the
power to hear the plaintiffs' c. 93A claim as a matter of pendent juris-
diction, where the plaintiffs failed to assert their c. 93A claim in the
Federal court, and where it was not clear that the Federal court would
have declined to hear that claim. [448-453]
The four-year limitation period for actions under G. L. c. 93A provided
by the 1975 amendment of G. L. c. 260, § 5A, did not bar an action
based on ·c. 93A claims which accrued no later than March, 1971,
where the plaintiffs would have had only the six-day period between
the approval of the amendment and its effective date in which to com-
mence their action. [453-455]

CIVIL ACTION commenced in the Superior Court on No-
vember 5, 1976.

----

[1] Douglas S. H. Anderson is a copartner in The Anderson Company, a
limited partnership.  The other plaintiffs are Elizabeth R. Anderson, a co-
partner; Andre R. Sigourney and Douglas S. H. Anderson, trustees of a
trust under the will of Lloyd D. H. Anderson.  Alice S. E. Anderson, a co-
partner was originally named as a plaintiff.  A suggestion of death was
filed later and Douglas S. H. Anderson, as personal representative under
her will, has been substituted as a party in her place.

[2] The defendants are Phoenix Investment Counsel of Boston, Inc.
(formerly John P. Chase, Inc.), John P. Chase, chairman of the board of
directors and chief executive officer of Chase, Inc., Henderson Inches, Jr.,
a vice president of Chase, Inc., and Richard A. Spindler, a vice president
of Chase, Inc.

The case was heard by *Bennett,* J., on motion for summary judgment and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court ordered direct review on its own initiative.

*Richard M. Zinner (Ronald H. Rappaport* with him) for the plaintiffs.

*Harvey E. Bines (Alicia R. Lopez & Frank J. Bailey* with him) for the defendants.

NOLAN, J. This case is before us on a report from the Superior Court. The complaint on which this case is based was filed in the Superior Court in November, 1976, and contained allegations (count 1) that certain of the actions of the defendant Phoenix Investment Counsel of Boston, Inc. (Phoenix), regarding investment counseling services, constituted "unfair and deceptive acts and practices in the conduct of trade and commerce" and were violations of G. L. c. 93A, § 2, and certain regulations issued thereunder by the Attorney General of the Commonwealth; and (count 2) that Phoenix's failure "to perform as investment managers to analyze and supervise the accounts and . . . their failure to counsel the plaintiffs [Andersons] concerning appropriate changes of investment" amount to a breach of contract. These allegations were based upon contentions that, as of November 1, 1966, the Andersons entered into a written agreement with John P. Chase, Inc. (now Phoenix), pursuant to which Phoenix was to provide "analysis, advice, counseling, management, and supervision with respect to each security and cash account" which the Andersons held. The Andersons claim to have borrowed substantial sums of money in order to meet Phoenix's minimum account requirements and they assert that Phoenix was notified of the loan transactions. They also aver that they executed, delivered, and never rescinded agreements designating John P. Chase as the agent and attorney-in-fact for each account; and that they paid all fees charged for the period October 6, 1966, through February 5, 1971. The Andersons contend that on numerous occasions during a period extending from September, 1966, through March, 1971, Phoenix made cer-

tain representations which deceived and misled them and it failed to disclose certain relevant information. They also claim that Phoenix did not provide the agreed contractual investment counselling and supervisory services, and that the services actually provided were not tailored to their particular personal needs. The Andersons claim to have suffered damages in the amount of $400,000, plus interest, and seek double or treble damages, plus reasonable attorneys' fees, and costs.

Phoenix filed an answer and then a document entitled, "Amended Answer, Counterclaims, Joinder of Counterclaim Defendant and Counterclaim, and Third-Party Complaint." The Andersons responded with motions to dismiss the counterclaims and the third-party complaint, and for judgments thereon. Andre R. Sigourney also filed motions to dismiss the defendants' counterclaim and the third-party complaint, as well as a motion to dismiss, and a motion for judgment on the pleadings. The Andersons also filed answers. Their motion to dismiss the counterclaim, later amended, and Sigourney's separate, similar motion were allowed as to counts 1 and 3 (malicious prosecution and violation of G. L. c. 93A), and denied as to count 2 (abuse of process). The plaintiffs' motion to dismiss the third-party complaint and Sigourney's individual motions were allowed. The Andersons' motions for judgment on the counterclaim and on the third-party complaint were also allowed as to counts 1 and 3 as was Mr. Sigourney's motion for judgment on the pleadings.

The Andersons and Sigourney each filed motions for summary judgment dismissing the abuse of process counterclaim. Sigourney's motion was allowed and the Andersons' motion was allowed except as to Douglas S. H. Anderson as copartner and trustee.

Phoenix also filed a motion for summary judgmei t which the trial judge characterized in his report as being based on contentions that the Andersons' claims should be barred in accordance with the principle of res judicata or collateral estoppel, because of a prior action among certain of the

same parties (*Anderson I*);[3] and that the claim under G. L.
c. 93A, based on events which allegedly occurred in 1971,
should be barred by the applicable four-year statute of limi-
tations (G. L. c. 260, § 5A, inserted by St. 1975, c. 432,
§ 2); or by the statute of limitations applicable in 1971 to
tort claims. The judge allowed the motion as to the con-
tract claims of the complaint on the ground of collateral
estoppel against the Andersons in their capacity as copart-
ners, and to Alice Anderson, individually. He allowed it as
to the contract claims as to all individual defendants, to the
extent that they acted within the scope of their employ-
ment. With respect to the claim under G. L. c. 93A, he
denied the motion to the extent that it invoked exemption
under G. L. c. 93A, § 3 (1)(*b*), because the transactions oc-
curred primarily and substantially in Massachusetts. The
judge later denied Phoenix's motion for summary judgment
to the extent that it was based on res judicata or collateral
estoppel.

The trial judge found, for the purpose of acting on the
motion for summary judgment, that the facts litigated and
found in *Anderson I* "are essentially the facts underlying
Plaintiffs' claim" raised in *Anderson II* (the case before us),
as nearly all the parties are the same; but that G. L. c. 93A,

---

[3] *The Anderson Company & another* v. *John P. Chase, Inc.*, 73 Civ.
2530 (S.D.N.Y., March 12, 1975), aff'd No. 75-7239 (2d Cir. Nov. 18,
1975), cert. denied, 424 U.S. 969 (1976) (*Anderson I*).

The *Anderson I* complaint alleged that investment losses had been in-
curred by the plaintiffs as a result of the acts or omissions of John P.
Chase, Inc. (later Phoenix Investment Counsel of Boston, Inc.), through
its employees, Henderson Inches and Richard A. Spindler, in violation of
the Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 et seq. [1976]), in
breach of contract and in breach of the fiduciary duty owed to the plain-
tiffs by John P. Chase, Inc. As a result, [d]efendants' . . . negligence . . .
operated as a fraud upon plaintiff." After a jury-waived trial, the Fed-
eral judge found against the plaintiffs on every count: "The plaintiffs
have failed to establish by a preponderance of credible evidence or any
evidence for that matter that Chase, Inc. is chargeable with any misrepre-
sentation, oral or written, fraud or breach of duty, contractual or
statutory. The issues of credibility herein are resolved in favor of the de-
fendant. Anderson's testimony on the controverted matters is not worthy
of belief."

§ 9 (8), compelled the result that res judicata and collateral estoppel did not bar the plaintiffs' c. 93A claim.

He allowed the defendants' motion for summary judgment as to the Andersons' c. 93A claim, on the basis of the apparently applicable four-year statute of limitations. It was not disputed that the last act alleged to have violated c. 93A occurred in March, 1971, and that the action was commenced in October, 1976.

The judge then noted that the contract claim asserted by the Anderson Trust remained, but determined that his earlier interlocutory order regarding the c. 93A claim so affected the merits of the controversy that the matter ought to be first determined by the Appeals Court.

From this procedural underbrush, two questions have been reported by the judge, pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974): "1. Whether the provisions of c. 93A, § 9 (8) bar, as immaterial, the common law defenses of issue preclusion, collateral estoppel and *res judicata* in the circumstances of this case; and 2. Whether the 1975 statute of limitations applicable to c. 93A applies to c. 93A claims already accrued, for acts in this case occurring prior to 1975." The trial judge stayed further proceedings, until further order of that court.

We transferred the case to this court sua sponte, G. L. c. 211A, § 10. The report is in proper form. G. L. c. 213, § 1B, and G. L. c. 231, § 111; Mass. R. Civ. P. 64. See *Maldonado, petitioner*, 364 Mass. 359, 366 (1973); see also *Dorfman* v. *Allen*, 386 Mass. 136 (1982). We answer both questions in the negative.

1. *Res judicata*. The first issue presented for review, as stated in the judge's report, is: "Whether the provisions of [G. L.] c. 93A, § 9 (8)[4] bar, as immaterial, the common law

---

[4] General Laws c. 93A, § 9 (8), states: "Except as provided in section ten, recovering or failing to recover an award of damages or other relief in any administrative or judicial proceeding, except proceedings authorized by this section, by any person entitled to bring an action under this section, shall not constitute a bar to, or limitation upon relief authorized by this section."

defenses of issue preclusion, collateral estoppel and *res judicata* in the circumstances of this case."

The doctrines of res judicata and collateral estoppel are most important in assuring that judgments are conclusive, thus avoiding relitigation of issues that were or could have been raised in the original action (res judicata) and of questions of law or fact necessary to the judgment in the original action (collateral estoppel). *Kremer* v. *Chemical Constr. Corp.*, 456 U.S. 461, 466 n.5 (1982). *Cromwell* v. *County of Sac*, 94 U.S. 351 (1876). The two doctrines "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980).

Section 9 (8) has been described by both parties as a State rule of res judicata. We need not reach the question of the extent to which § 9 (8) modifies traditional rules of res judicata or collateral estoppel, however, because its modifying effect, if any, is superseded by the Federal rule of res judicata. When a State court is faced with the issue of determining the preclusive effect of a Federal court's judgment, it is the Federal law of res judicata which must be examined. *Aerojet-General Corp.* v. *Askew*, 511 F.2d 710, 716 (5th Cir.), reh'g denied, 514 F.2d 1072, cert. denied sub nom. *Metropolitan Dade County* v. *Aerojet-General Corp.*, 423 U.S. 908 (1975). *Kern* v. *Hettinger*, 303 F.2d 333, 340 (2d Cir. 1962). *In re Bailleaux*, 47 Cal. 2d 258 (1956), cert. denied sub nom. *Heinze* v. *Bailleaux*, 353 U.S. 957 (1957). *Younger* v. *Jensen*, 26 Cal. 3d 397, 411 (1980). *Shell Oil Co.* v. *Texas Gas Transmission Corp.*, 176 So. 2d 692 (La. App. 1964). *Peros* v. *Cia De Nav Mar Netumar*, 75 Misc. 2d 913 (N.Y. Civ. Ct. 1973). Restatement (Second) of Judgments § 87 (1982). See also *United States* v. *Ford Motor Co.*, 522 F.2d 962 (6th Cir. 1975). 18 C.A. Wright & A.R. Miller, Federal Practice and Procedure, § 4468 (1981). It is for this reason that we answer "No" to the judge's first reported question.

Simply stated, if a set of facts gives rise to a claim based on both State and Federal law, and the plaintiff brings the action in a Federal court which had "pendent" jurisdiction to hear the State claim but the plaintiff declines to assert such State claim, he may not subsequently assert the State ground in a State court action. *Woods Exploration & Producing Co.* v. *Aluminum Co. of Am.*, 438 F.2d 1286, 1315 (5th Cir. 1971), cert. denied, 404 U.S. 1047 (1972). *Ford Motor Co.* v. *Superior Court*, 35 Cal. App. 3d 676 (1973). See generally A Closer Look at Pendent and Ancillary Jurisdiction; Toward a Theory of Incidental Jurisdiction, 95 Harv. L. Rev. 1935 (1982). Restatement (Second) of Judgments § 25 comment e, illustration 10 (1982). The exception to this rule is that if the Federal court in the first action would clearly not have had jurisdiction to hear the State claim or, if having jurisdiction, clearly would have declined to exercise it as a matter of discretion, then a second action in a State court should not be precluded. See *Pope* v. *Atlanta*, 240 Ga. 177, 179 (1977), and 242 Ga. 331 (1978), cert. denied, 440 U.S. 936 (1979). Restatement (Second) of Judgments § 25 comment e, illustration 10 (1982).

It appears that the United States District Court judge who heard the *Anderson I* case had the power to hear the plaintiffs' c. 93A claim as a matter of pendent jurisdiction. See *UMW* v. *Gibbs*, 383 U.S. 715 (1966) (a Federal court judge hearing an action arising under Federal law may also entertain a State law action arising under the same set of facts or transaction); A.W. Wright, Federal Courts § 19 (3d ed. 1976). The trial judge who submitted the reported questions to this court assumed that essentially the same facts supported both Federal and State claims of the plaintiffs.

While the Federal court judge, then, had the power to hear the plaintiffs' c. 93A claim, the exercise of such jurisdiction was discretionary. *UMW* v. *Gibbs, supra* at 726. The justification for the employment of pendent jurisdiction "lies in considerations of judicial economy, convenience

and fairness to litigants; . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* A State claim should be dismissed if the Federal claim is dismissed before trial, or if the State issues appear to predominate, or if there is a strong possibility of jury confusion if the claims are not separated. *Id.* at 726-727. The policy in favor of hearing pendent State claims was expressed by the United States Supreme Court in *Hagans* v. *Lavine*, 415 U.S. 528 (1974): "[I]t is evident from *Gibbs* that pendent state law claims are not always, or even almost always, to be dismissed and not adjudicated. On the contrary, given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of these claims." *Id.* at 545-546. It would be an exercise of prognosticative futility to attempt here to determine whether the Federal court would have heard the c. 93A claim if it had been raised. We note, however, that there was a substantial possibility under our reading of the *Gibbs* considerations that the Federal court would have exercised its jurisdiction. We note, further, that at least one Federal court has exercised its pendent jurisdiction of a plaintiff's c. 93A claim. *Kaminski* v. *Shawmut Credit Union*, 416 F. Supp. 1119 (D. Mass. 1976).

Whether the Federal court definitely, or even probably, would have entertained the c. 93A action is not, however, the question. Rather, "unless it is *clear* that the federal court would have declined as a matter of discretion to exercise [pendent] jurisdiction (for example, because the federal claim, though substantial,[5] was dismissed in advance of

---

[5] The Andersons argue that the Federal court judge lacked the power to hear the c. 93A claim because, subsequent to their suit in Federal court, the United States Supreme Court determined that no private right of action for damages exists, pursuant to the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, et seq. (1976), *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U.S. 11 (1979). As it was upon just such a claim that jurisdiction in the Federal court was based, the plaintiffs continue, their Federal

trial), the state action is barred" (emphasis added). Restatement (Second) of Judgments § 25 comment e, illustration 10 (1982). The reason for this rule is evident. The rule of res judicata is designed to forestall a plaintiff from getting "two bites at the apple." We cannot countenance a plaintiff's action in failing to plead a theory in a Federal court with the hope of later litigating the theory in a State court because it was possible, or even probable, that the Federal court would have declined to exercise its pendent jurisdiction. Rather, such a plaintiff should plead his State claim in the Federal court and if that court fails to hear the claim the plaintiff may then ordinarily file suit in a State court. Cf. *Mattson* v. *Costa Mesa*, 106 Cal. App. 3d 441 (1980). Therefore, "in cases of doubt, it is appropriate for the rules of res judicata to compel the plaintiff to bring forward his state theories in the federal action, in order to make it possible to resolve the entire controversy in a single lawsuit."[6] Restatement (Second) of Judgments § 25, Re-

---

claim lacked the requisite substance to give the Federal court jurisdiction to hear the c. 93A claim. We disagree.

At the time the *Anderson I* decision in favor of the defendants was rendered, the courts were divided as to whether there was a private right of action under the antifraud provisions of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6. See, e.g., *Bolger* v. *Laventhol, Krekstein, Horwath & Horwath*, 381 F.Supp. 260 (S.D.N.Y. 1974) (implied right of action); *Courtland* v. *Walston & Co.*, 340 F. Supp. 1076 (S.D.N.Y. 1972) (implied right of action); *Jones Memorial Trust* v. *Tsai Inv. Servs., Inc.*, 367 F. Supp. 491 (S.D.N.Y. 1973) (dictum) (no private right of action for mere mismanagement as opposed to concealment and misrepresentation). Subsequent to *Anderson I*, every United States Court of Appeals that considered the question found a private right of action. *Lewis* v. *Transamerica Corp.*, 575 F.2d 237 (9th Cir. 1978). *Wilson* v. *First Houston Inv. Corp.*, 566 F.2d 1235 (5th Cir. 1978). *Abrahamson* v. *Fleschner*, 568 F.2d 862 (2d Cir. 1977), cert. denied, 436 U.S. 913 (1978).

A claim is insubstantial if it is "essentially fictitious," *Bailey* v. *Patterson*, 369 U.S. 31, 33 (1962), or "obviously without merit," *Ex parte Poresky*, 290 U.S. 30, 32 (1933). When, as in this case, a question has not been obviously foreclosed by prior decisional law, it is not insubstantial for the purpose of applying the rules of res judicata.

[6] We note that if the courts of the Commonwealth fail to rule that the plaintiffs' c. 93A claim is barred by res judicata, the defendants are free to return to the Federal court to request an injunction under the exception to

porter's Note 228 (1982). *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1315 (5th Cir. 1971).

Since the plaintiffs failed to assert their c. 93A claim in *Anderson I*, and since it is not clear if the Federal court in New York would have declined to hear the c. 93A claim, the plaintiffs may be barred by the Federal rule of res judicata from now litigating their c. 93A claim.[7]

2. *Statute of limitations.* The second question presented by the judge's report is: "Whether the 1975 statute of limitations applicable to c. 93A [G. L. c. 260, § 5A], applies to c. 93A claims already accrued, for acts in this case occurring prior to 1975." We answer this question in the negative.

General Laws c. 260 was amended by St. 1975, c. 432, § 2, adding § 5A, which requires that actions arising on account of violations of c. 93A, "whether for damages, penalties or other relief . . . be commenced . . . within four years . . . after the cause of action accrues." That amendment does not contain any indication of whether it was intended to be applicable to causes of action then existing. The general rule is that if a statute of limitations does not contain language clearly limiting its application to causes of action arising in the future, then it controls future procedure in

---

the anti-injunction statute, 28 U.S.C. § 2283 (1976). That statute bars a Federal court from enjoining pending State proceedings "except . . . to protect or effectuate its judgments." *Id.* Under this exception, the c. 93A claim, even though not litigated in a Federal court, might be barred by res judicata and thus be subject to an injunction pursuant to the § 2283 exception. *Browning Debenture Holders' Comm.* v. *Dasa Corp.*, 605 F.2d 35 (2d Cir. 1978). See also *Brown* v. *McCormick*, 608 F.2d 410 (10th Cir. 1979).

[7] That new rights and relief were created by c. 93A is not relevant to the question whether res judicata would apply. Rather, a court should inquire whether the transaction that gave rise to the alleged wrong was substantially the same for each of the separate legal claims. *UMW* v. *Gibbs, supra.* If the judge should decide that the transaction giving rise to these two actions was not substantially the same, and thus that res judicata should not apply, the plaintiffs would still be collaterally estopped from relitigating questions of law or fact necessarily determined in the first action. *Southern Pac. R.R.* v. *United States*, 168 U.S. 1, 48-49 (1897). Cf. *Wishnewsky* v. *Saugus*, 325 Mass. 191, 195 (1950).

reference to previously existing causes of action. *Mulvey* v. *Boston*, 197 Mass. 178, 181 (1908). If a statute of limitations restricts the time for enforcing such accrued rights, it is constitutional if there is a reasonable time after the enactment of the statute for enforcing these rights. *Atchafalaya Land Co.* v. *F.B. Williams Cypress Co.*, 258 U.S. 190, 197 (1922). *Ferguson* v. *Sturm, Ruger & Co.*, 524 F. Supp. 1042, 1045-1046 (D. Conn. 1981). *Massachusetts Gen. Hosp.* v. *Grassi*, 356 Mass. 1, 3 (1969), and cases cited. See *Brookline* v. *Carey*, 355 Mass. 424, 427 (1969). The question of what is a reasonable time has been addressed in a number of cases. *Cioffi* v. *Guenther*, 374 Mass. 1, 3-4 (1977) (six months). *Massachusetts Gen. Hosp.* v. *Grassi, supra* at 3 (rule of court, ninety days). *Cunningham* v. *Commonwealth*, 278 Mass. 343, 345-346 (1932) (ninety days). *Mulvey* v. *Boston, supra* at 185 (thirty days). In determining that thirty days was a reasonable period, the court noted in *Mulvey* that the type of claim (for a personal injury) was one about which the claimant could not fail to have full knowledge in ordinary cases; that initiating the action was not a complicated process; that there are important reasons for prompt presentation of such claims; that the Legislature had found thirty days to be a reasonable time for commencing an action under certain other statutes; and that certain types of laws take effect thirty days after passage. *Id.* at 183-184. The court observed that the reasonableness of the period "depends largely upon the place, and its geographical extent and condition" and that "[p]robably only a few persons" would be limited to the thirty-day period. *Id.* at 185. In addition, the court quoted approvingly from the opinion in *Wilson* v. *Iseminger*, 185 U.S. 55, 63 (1902), that the courts would not inquire into the wisdom of the Legislature's decision to establish the period unless the time allowed was so insufficient as to become a denial of justice. *Id.* at 183. We now apply these considerations to the case before us.

The occurrence of *Anderson I* forecloses the questions of whether the plaintiffs were aware of the c. 93A claim and

whether initiating the action was a complicated process. The reasons for the prompt presentation of such claims are not so compelling as those regarding the type of personal injury claims considered by the court in *Mulvey*. We do not know whether many persons are affected by the statutory amendment at issue. The Commonwealth is much more urbanized than it was at the time of the *Mulvey* decision and means of communication have been greatly expanded. The Legislature's decision to limit to four years the period during which this type of action may be brought is not unreasonable. Thus, we look to the time allowed "between the passage of the law and the day when it takes effect." *Mulvey, supra* at 184. The amendment (St. 1975, c. 432, § 2) was approved on July 9, 1975, and became effective on July 15, 1975, when the Governor filed a statement with the Secretary of the Commonwealth declaring that: "The immediate preservation of the public convenience requires that the law . . . should take effect forthwith." As a result, the Andersons, for whom the four years admittedly began to run on or before March, 1971, would only have had the time between July 9 and July 15, 1975, in which to commence their action. They would not have had the time to provide the written demand for relief at least thirty days prior to filing the action. G. L. c. 93A, § 9 (3). We conclude that the six-day period does not "afford a full and ample time to all persons, having such causes of action, to commence their suits." See *Loring* v. *Alline*, 9 Cush. 68, 71 (1851). It is manifestly insufficient and constitutes a denial of justice. See also *Wilson* v. *Iseminger, supra* at 63. This is not to indicate that the time contemplated by the General Court is inadequate. We determine only that, as made effective and as applied to this case, G. L. c. 260, § 5A, is not applicable.[8]

---

[8] The plaintiffs are not barred from claiming that the six-day period was constitutionally infirm as applied to them merely because they waited more than thirty days after passage of § 5A to press their claim. Any attempt to conform to the new statute of limitations would have been futile, and we would not require a plaintiff to engage in a futile activity in order to preserve his rights.

3. *Conclusion.* In conclusion, we answer the reported questions by stating that (1) G. L. c. 93A, § 9 (8), does not bar as immaterial the common law defenses of res judicata or collateral estoppel in the circumstances of this case, and that (2) G. L. c. 260, § 5A, may not constitutionally be applied to the plaintiffs' claim in the circumstances of this case. The case is remanded to the Superior Court for action consistent with this opinion.

*So ordered.*