Borenstein, J.
INTRODUCTION
The defendant, Debral Realty, Inc., filed a counterclaim seeking a deficiency judgment for the amount due after due allowance for foreclosure proceeds and other payments received on account from the plaintiff. At trial, in March 1996, a jury rejected the plaintiffs claim that he and Debral entered into an oral agreement to modify and extend the loan payment terms and to refrain from exercising its foreclosure rights. The jury further found there was no enforceable promise made by Debral to the plaintiff. The plaintiff is seeking a court order against the Singhs to convey the premises at 91-93 Belmont Street, Cambridge, Massachusetts, to him. The plaintiff seeks this conveyance based upon his assertions that the Singhs had actual notice of his claim to title to the premises and because the foreclosure sale was invalid.
Debral now moves for summary judgment pursuant to Mass.R.Civ.P. 56(c) on its counterclaim. The Singhs move for summary judgment pursuant to Mass.R.Civ.P. 56(c) on their claim of judicial and collateral estoppel. The Plaintiff moves to amend his complaint and for summary judgment pursuant to Mass.R.Civ.P. 56(c) on his cross motion on Debral’s counterclaim. Hearings on these motions were held before me on June 19, 1996 and July 22, 1996.
For the reasons set forth below, Debral’s motion for summary judgment is ALLOWED, the plaintiffs motion to amend is DENIED, the plaintiffs cross motion for summary judgment is DENIED and the Singhs’ motion for summary judgment is ALLOWED.
BACKGROUND
Between October 23, 1987 and March 12, 1990, Debral loaned the plaintiff $515,000.00. At trial, the plaintiff admitted that he had signed the promissory notes for the loans and had defaulted on the loan payments. On November 19, 1990, Debral foreclosed on the properties. The foreclosure sales were properly conducted in accordance with M.G.L.c. 244. After giving the plaintiff credit for the foreclosure proceeds and all payments made on account, a deficiency of $104,646.29 remains.
Additionally, Debral states in its affidavit in support of summary judgment that from October 1, 1991 until the plaintiff was finally evicted in March 1995, the plaintiff wrongfully occupied 91-93 Belmont Street; collected and kept the rents; and used one of the three units as his own residence. Debral argues that the fair value of the plaintiffs • use and occupancy to be $90,000.00,[2] and the total due from the plaintiff to Debral is, therefore, $ 194,646.29. The Singhs were the purchasers of 91-93 Belmont Street, subsequent to the foreclosure sale.
SUMMARY JUDGMENT STANDARD
Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case. Norwood v. Adams-Russell Co.. 401 Mass. 677, 683 (1988). A party in a civil action moving for summary judgment on a claim on which the opposing party will have the burden of proof at trial is entitled to summary judgment if it demonstrates by reference to the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” Lalonde v. Eissner, 405 Mass. 207, 209 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Actions to recovery founded upon promissory notes are particularly appropriate to disposition on a motion for summary judgment. Wentworth Home for the Aged v. Walters, 1992 Mass.App.Div. 171, citing United States Trust Co. of New York v. Herriott, 10 Mass.App.Ct. 313, 320 (1980). Subsequent to the establishment of execution, delivery and nonpayment, the “defendant ha[s] the burden of setting forth by way of affidavit specific facts showing that there [is] a genuine issue for trial. Walters, 1992 Mass.App.Div. 171 (citations omitted).
DISCUSSION
I. Debral’s Motion for Summary Judgment and the Plaintiffs Counter Motion for Summary
*56 Judgment and Motion to ■ Amend Plaintiffs Complaint
Pursuant to Massachusetts foreclosure law, Debral must have “act[ed] in good faith and must [have] use[ed] reasonable diligence to protect the interest of the mortgagor.” Williams v. Resolution GGF OY, 417 Mass. 377, 382-83 (1994), quoting Seppala and Aho Construction Co., Inc. v. Peterson, 373 Mass. 316, 320 (1977). Reasonable diligence concerns whether the sale was advertised, the proceedings were open and notice of sale was given to all interested parties. Pemstein v. Stimpson, 36 Mass.App.Ct. 283, 291 (1994). Massachusetts law, relating to real estate foreclosure, “requires only minimal advertising and sale efforts.” Id. Pursuant to Massachusetts law, notice of sale must be published once in each of three (3) successive weeks in a newspaper in the town where the subject land is located or in a newspaper with general circulation in that town. M.G.L.c. 244, §14. In addition, the mortgagee must notify the mortgagor in writing of the mortgagee’s intention to foreclose and to seek a deficiency after foreclosure. M.G.L.c. 244, §17B.
In this case, proper legal notices were published pursuant to M.G.L.c. 244, §§14, 17B. Debral mailed to the plaintiff and other interested parties, by certified mail/return receipt required, a notice of intention to foreclose and of deficiency. The mortgagee’s sale of real estate notice was published for three consecutive weeks prior to foreclosure.[3]
The plaintiff has asserted several theories under which this court should deny the defendants’ motions and allow his. Each allegation will be addressed individually below.
A.The Plaintiffs Motion to Amend His Complaint
The plaintiffs motion to amend his complaint is denied. The plaintiff raised the issues of invalid notification of the foreclosure and illegality of the promissory notes because they are in violation of usury statutes, for the first time on July 11, 1996 — more than four years after the suit was filed and more than six years after the final note at issue was executed. It is firmly established that an affirmative defense, including illegality, must be pled in a timely manner or it is deemed abandoned. See Mass.R.Civ.P. 8 (c).
Four years after the suit was filed and two separate complaints (1992 and 1995) later cannot be construed as timely, even under the most liberal interpretation of Mass.R.Civ.P. 8(c). Furthermore, an affirmative claim pursuant to G.L.c. 271, §49(c) would be barred by the applicable statute of limitations.
A deficiency suit, however, reopens a foreclosure, enabling the plaintiff to challenge the foreclosure insofar as he is able to show that misconduct by Debral, during the foreclosure sale, resulted in a lower sale price. Lynn Five Cent Savings Bank v. Portnoy, 306 Mass. 436 (1940); Dreary v. Crane, 4 Mass.App.Ct. 719 (1976).
B.Foreclosure Notices Were in Compliance with G.L.c. 244, §17B
The plaintiff contends that Debral cannot recover the deficiencies because it failed to comply with the statutory requirements contained in G.L.c. 244, §17B. The issue of whether the initial foreclosure notices were in compliance with proper statutory pronouncements does not, however, fall within the proscribed standards set forth in Lynn Five Cent Savings Bank v. Portnoy. No logical inference can be drawn showing that the inadequacy of the letters of notification sent to the plaintiff, in this case, negatively affected the sale price. Had the plaintiff been allowed to amend his complaint to include this affirmative claim, the argument would, nevertheless, remain tenuous at best.
The plaintiffs argument is twofold. Specifically, that the notices erroneously identified the holder of the mortgages as “Globe Funding Trust,” rather than Debral Realty, and because the notices lacked adequate specificity as to which properties and mortgages were being foreclosed upon.
The plaintiff, in his testimony, admitted at trial that he received notice and understood that the reference to Globe Trust Fund was a clerical error. Moreover, the plaintiff by his own admissions stated that he was aware of the true mortgage holder and which properties and mortgages were being foreclosed upon. Additionally the notice was signed by “Alan H. Shocket, Attorney for Debral Realty Trust.” Most telling perhaps is the fact that the plaintiff was present at the foreclosure sale, which strongly evinces that the plaintiff received actual notice and that Debral complied with G.L.c. 244 §§14 and 17B. Fairhaven Savings Bank v. Callahan, 1983 Mass.App.Div. 179. “A party in interest whose rights might be adversely affected by the event to which a notice relates cannot willfully shut his eyes to the means of acquiring knowledge which is at hand and expect blitherfy to escape the consequences of his ignorance.” Id. at 180.
The cases cited by the plaintiff in support of this claim concerned situations wherein the mortgagor received no actual notice as to the identity of the holder, what properties were being foreclosed upon or when the sale was to be conducted. See Bottomly v. Kabachnick, 13 Mass.App.Ct. 480 (1982) review denied, 386 Mass. 1103; Roche v. Farns, 106 Mass. 509, 513 (1871). The plaintiff cannot now contend that he did not receive actual notification because the form of the notice did not adhere to the technical letter of the law. This court will not read the statute in such a formalistic, hypertechnical manner, but rather will construe it in its practical application, purpose and effect.
C.Violation of the Criminal Usury Statute M.G.L.c. 271, §49
The plaintiffs affirmative claim that all four promissory notes at issue should be declared void because they were in violation of the criminal usury statute has also been abandoned. See Mass.R.Civ.P. 8(c). This *57 claim would also be barred by the doctrine of laches and the applicable statute of limitations.
Specifically, the plaintiff argues that at material times Debral was not registered with the Attorney General’s office as required by G.L. 271, §49(d). Debral was in fact unregistered between January 1, 1989 and May 5, 1989. The plaintiff contends that because Debral was unregistered during this three-month period, the promissory note executed March 28, 1989 violated the usury statute. The plaintiff further contends that Debral violated the usury statute by being in possession of all the notes at this time, because these notes called for interest upon default in excess of tweniy per cent per annum.[4]
Pursuant to G.L.c.. 271, §49, an unregistered lender “may not charge interest and expenses in excess of twenty per cent for a year." Begelfer v. Najarian, 381 Mass. 177, 182-83. The above restriction can be avoided, however, if the lender “notifies the Attorney General of his intent to engage in a transaction or transactions [in excess of twenty per cent per annum] . . . providing any such person maintains records of any such transactions. Such notification shall be valid for a two-year period and shall contain the person’s name and accurate address.” G.L.C. 271, §49(d).
In determining whether to find the promissory notes void the court balances several factors, which include “the importance of the public policy against usury, whether a refusal to enforce the term will further that policy, the graviiy of the misconduct involved, the materiality of the provision to the rest of the contract, and the impact of the remedy on the parties’ rights and duties.” Begelfer, 381 Mass. at 189.
Neither the purpose of G.L.C. 271, §49 nor public policy would be served if this court were to find the promissory notes in violation of the usury statute. The usury statute “is designed to protect necessitous debtors from outrageous demands by lenders.” Begelfer, 381 Mass. at 181. Debral’s failure to renew its filing with the Attorney General’s office, for three months, cannot be construed as a material violation of the statute.[5] This court will not void the promissory notes based upon a clerical error.
More importantly, the plaintiff explicitly waived this claim when he testified at trial that he harbored no particular concerns about the interest rates included in these notes, that he was well aware of the fact that the loan relationship carried high rates of interest and that he recognized the risks associated with this type of contractual relationship. Moreover, there was no assertion or objection by the plaintiff during the trial that the applied interest rates of default were usurious.
As an aside, if this court were to find that the loans did violate the usury statute and the plaintiffs claims were timely, because the violations were clerical rather than substantive this court would limit the plaintiffs remedy to a credit for any amounts in excess of the twenty per cent limitation. See Begelfer, 381 Mass. at 187-89.
D. Debral’s Publication of the Postponement Date and Failure to Adjourn the Sale Due to Sparse Attendance
1. Publication of the Postponement Date
The plaintiff claims that the foreclosure sale is void because Debral was obligated and failed to make additional legal advertisements concerning the postponed sale scheduled for November 19, 1990; he is not disputing that the original foreclosure sale scheduled for October 5, 1990 was properly advertised. This contention is not supported by the record or by law. Debral has a duty to be reasonably diligent in its efforts to sell the property. Reasonable diligence concerns whether the sale was advertised, the proceedings were open and notice of sale was given to all interested parties. Pemstein, 36 Mass.App.Ct. at 291. “[B]ad faith or failure of diligence has been of an active and conspicuous character.” Id. at 287 (citing Clark v. Simmons, 150 Mass. 357, 361 (no notice to anyone of adjourned date of the foreclosure sale)).
The plaintiff has incorrectly alleged that Debral failed to advertise the postponement date for the foreclosure sale. Debral placed two additional advertisements in the Boston Globe on November 14, 1990 and November 18, 1990. Debral additionally re-sent, certified mail, return-receipt requested, notice of the foreclosure sale postponement date to all interested parties. Based on the above, Debral did satisfy the statutory and Pemstein standards.
2. Debral’s Failure to Adjourn the Foreclosure Sale Due to Sparse Attendance
The plaintiff contends that Debral breached its dufy by failing to adjourn the foreclosure sale on the postponement date of November 19, 1990, due to sparse attendance. Specifically, the plaintiff argues, Debral did not act prudently because it failed to adjourn the proceedings when fewer persons (about half) attended the postponed foreclosure sale than the original foreclosure sale (between thirteen and fifteen persons attended the original foreclosure sale) (Plaintiffs Aff. No. 7); thus, the reduced attendance had a chilling effect on the sale price. This argument fails for two reasons.
First, the original foreclosure sale was postponed at the request of the plaintiff himself.[6] Where a postponement of a foreclosure sale is due to the request of the mortgagor, it is “not necessary to advertise the same; sufficient notice being given to protect the mortgagor’s interest.” Stevenson v. Dana, 166 Mass. 163.
Second, the legal precedence directly opposes the plaintiffs position. “Where there was a compliance with the terms of a mortgage in regard to giving notice of a sale . . ., the court [is] not bound to find that an adjournment thereof would have benefited the mort *58 gagor.” Vayeh v. Bigelow, 208 Mass. 89 (1911) [alteration added). Moreover,
Scarcity of bidders at foreclosure sale does not render sale invalid, where mortgagor was present at sale and it was not alleged that he was unable to induce bidders to attend sale or that higher bid could have been obtained if many bidders had been present, since mortgagee is not bound to adjourn sale merely because of the scarcity of bidders.
Bovajian v. Hart, 292 Mass. 447 (1936); see also DesLauries v. Shea, 300 Mass. 30 (1938). Compare the present case with Katz v. Winokur, 13 Mass.App.Ct. 1020, 1021 (1982) (rescript), wherein the Katz court opined that “the chilling effect of the snowstorm on prospective bidders” was not sufficient to invalidate the foreclosure sale. Id. at 1020.
In support of this claim the plaintiff asserts that as a corollary of Debral’s failure to adjourn the foreclosure sale, the amounts obtained through the foreclosure of the mortgages were below the fair market value of the property. This, the plaintiff asserts, evinces that Debral did not act prudently. In a forced sale context there is, however, no obligation or expectation to obtain the fair market value of the foreclosure property. See United States Trust Co. of New York v. Herriott, 10 Mass.App.Ct. 313, 320 (1980).
E. The Resale of the Foreclosed Upon Properties Where Sold at a Higher Price Than Was Received at the Foreclosure Sale
The plaintiff contends that because Debral subsequently sold the foreclosed upon properties for a profit, thus realizing a windfall, the deficiency claim should be denied.[7] This windfall, as determined by the plaintiff, is based upon the fact that the properties were resold at a higher price than the amounts received at the foreclosure sale.
Whether property is resold for a loss or a profit after foreclosure, is, however, irrelevant in the calculation of a deficiency. It would be illogical to suggest that existing Massachusetts law relieves a debtor of a deficiency, for an indefinite period of time, upon the possibility that the highest bidder at the foreclosure sale may eventually sell the property for a higher price than he had paid at that sale. Furthermore, it would be equally untenable to suggest that had Debral resold the properties for a lesser amount than that received at the foreclosure sale, it could in turn seek that amount from the plaintiff.
The remaining contentions concerning the actual amounts owed by the plaintiff will be addressed at a hearing, whereupon, an assessment of damages will be conducted.[8]
II. The Singhs’ Motion For Summary Judgment
The Singhs have moved for summary judgment based upon the doctrines of collateral and judicial estoppel.
It is undisputed that subsequent to the consolidation of the plaintiffs 1992 action claiming title against Debral, with his claims against Debral and the Singhs in the present lawsuit, this court bifurcated the claims at a final pretrial conference and proceeded to trial on the issues in the 1992 action with respect to an alleged oral agreement between the plaintiff and Debral. The principal purpose of the bifurcation was based upon an understanding between the court and all parties that trying the claims against the Singhs would result in an inefficient utility of the court’s time, as well as that of the parties involved. The court and the parties, therefore, agreed that if the plaintiff was unsuccessful in his 1992 action against Debral, which is in fact the case, the plaintiff would have no remedy against the Singhs.
The doctrine of judicial estoppel mandates that “[a] party who has taken a position with regard to procedure, which has been acted or relied upon by his adversary or the court, is estopped from taking an inconsistent position respecting the same matter in the same proceeding to his adversary’s prejudice.” Brown v. Quinn, 406 Mass. 641, 646 (1990), aff'd, 406 Mass. 641, [internal quotations omitted) (quoting Orleans Educ. Ass'n v. School Dist. of Orleans, 193 Neb. 675, 678 (1975)); cf. Gordon v. Lewitsky, 333 Mass. 379, 381 (1955). Founded upon the expressed understanding between the court and the parties, the plaintiff is, therefore, judicially estopped from now claiming that the jury verdict in the 1992 action, against the plaintiff, has not foreclosed all claims against the Singhs.
Based on the above, the only alternative left open to the plaintiff, which would affect the claims against the Singhs, would have been to successfully prove that the foreclosure sale was improperly effectuated.[9] This the plaintiff has failed to do. Moreover, the issue of title to the property has already been adjudicated on the merits, wherein a jury decided that proper title of the property belonged to Debral. Thus, the plaintiff is barred from relitigating this claim under the principles of res judicata and collateral estoppel. See Mass.R.Civ.P. 8(c); Anderson v. Phoenix inv. Counsel of Boston, Inc., 387 Mass. 444, 449 (1982). It was at the time of trial or within the two separate complaints filed by the plaintiff, in which the plaintiff perhaps should have raised any affirmative defenses or claims. The plaintiff cannot now attempt to argue matters that “were or could have been raised in the original action . . .” Anderson, 387 Mass. at 449.
By reason of the jury’s rejection of the plaintiffs claim that he and Debral had entered into an oral agreement to modify and extend the loan payment, coupled with the proper foreclosure procedures by Debral, the undisputed facts concerning the execution, delivery and default on the promissory notes, and this court’s denial of the plaintiffs motion to amend his complaint, there is no genuine issue of material *59 fact concerning the liability of the plaintiff for the deficiency amounts of foreclosure due to Debral. Furthermore, the plaintiff is judicially and collateral es-topped from further proceedings against the Singhs.
ORDER
For the foregoing reasons, it is hereby ORDERED that Debral’s motion for summary judgment be ALLOWED; the Singhs’ renewed motion for summary judgment be ALLOWED; the plaintiffs motion to amend his complaint be DENIED; and the plaintiffs cross motion for summary judgment be DENIED. It is further ORDERED that a hearing concerning the assessment of damages be scheduled.

 Calculation includes rents collected, fair value of the unit the plaintiff occupied and an allowance for repairs, utility and maintenance.

 Che plaintiff is not disputing that the advertisements for t he original foreclosure sale were done in accordance with the statute.

 Che plaintiff further argues that the assignment, dated March 11, 1991, by Debral to Stephen Richmond, Trustee of Debral 1991 Realty Trust was also in violation of the usury statute because neither, in any capacity, were registered with the Attorney General’s office.

 Debral was registered with the Attorney General’s office on January 2, 1987. The registration was to expire January 2, 1989.

 The plaintiff and Debral agreed in writing to the terms under which the sale would be postponed and under what conditions a further continuance would be granted. This agreement was admitted as an exhibit at trial. The plaintiff breached the terms of the agreement and the foreclosure sale proceeded as stipulated by the parties.

 Debral as the holder of the mortgages, foreclosed on the properties, was the highest bidder at the foreclosure sale, and eventually resold the properties for a greater price than they had paid at the foreclosure sale.

 Chis court deems it appropriate to mention, however, that the plaintiffs requests that the court order Debral to render a detailed accounting of the deficiency and grant the plaintiff additional time in which to reconstruct his records, are without foundation. The plaintiff has stated that he requires the above because he “has been attempting to reconstruct his payment record but has encountered difficulty in this task due to a burglary at this (sic) home which rendered his files completely disorganized.” (Memorandum in support of plaintiffs cross motion, at 16.) A quick glance at the police report, which the plaintiff included in his affidavit, shows that the burglary occurred in August 1990. It is reasonable to assume that six years is a sufficient amount of time for the plaintiff to have reconstructed his records.

 The plaintiff further contends that the Singhs were not bona _fida purchasers because they had knowledge of the claims against Debral at the time of the sale. The Singhs have, however, submitted affidavits stating that they were bona fide purchasers and had no knowledge of any adverse claims against the property. Whereas, the plaintiff has never produced any evidence in support of this claim against the Singhs nor has he alleged any specific facts which would establish the existence of a genuine issue of material fact. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).