JOSEPH MANCUSO & another[1] *vs.* MICHAEL KINCHLA.

No. 02-P-742.

Norfolk. October 9, 2003. - March 3, 2004.

Present: LAURENCE, GREEN, & TRAINOR, JJ.

*Res Judicata. Collateral Estoppel. Practice, Civil,* Counterclaim and cross-claim, Pendent claim, Complaint, Amendment, Motion to amend. *Judgment,* Preclusive effect.

This court declined to address on appeal a potentially outcome-determinative issue that the parties to a civil action failed to brief in a manner complying with Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). [563-564]

The judge in a State civil action correctly determined that because a prior Federal proceeding necessarily involved and decided the core issue of fact essential to the judgment in that case, which issue was equally central to the State action, the Federal judgment precluded relitigation of that issue, where, despite the assertion in the State action of a different legal theory, the claim was unmistakably aimed at the same person who was the focus of the Federal action and who was alleged to have acted in the same capacity and to the same effect; because neither Federal nor Massachusetts law required precise identity or mutuality of parties for application of issue preclusion, the fact that the defendant in the State action was not named a defendant in the Federal action did not change the result. [564-565]

A Superior Court judge properly dismissed a civil complaint, where a Federal court in a prior action unquestionably had pendent jurisdiction to hear the State claims brought in this complaint, and where the defendant in this action properly raised res judicata as a defense to the complaint, in that (1) there was a final judgment on the merits in the Federal action; (2) the parties or their privies were identical in the two suits, despite the defendant here not being named a party in the Federal suit, because the defendant's relationship both to the business that he managed and to the allegations of misconduct in the two suits was sufficiently identical to warrant the application of the Federal doctrine of nonmutual party preclusion; and (3) the cause of action in the two actions was identical, as the facts underpinning the claims in the State action arose from the same nucleus of operative facts as those that were or could have been adjudicated in the Federal suit. [565-572]

The judge in a civil action did not abuse her discretion in denying the plaintiffs' motion to amend their complaint, where the allegations of the would-be amended complaint were in substance identical to those set forth

[1] Rosario Urdi.

in a prior Federal suit and an earlier State action, and therefore failed to state a viable claim because, if raised, they would not have survived a motion to dismiss on preclusion grounds. [572]

CIVIL ACTION commenced in the Superior Court Department on August 20, 1999.

A motion to dismiss was heard by *Elizabeth B. Donovan*, J., and a motion to amend the complaint was considered by her.

*Bruce L. Watson* for Joseph Mancuso.

*Gerald A. Phelps* for Rosario Urdi.

*Robert S. Wolfe* for the defendant.

LAURENCE, J. Joseph Mancuso and Rosario Urdi (herein the appellants) challenge two decisions of a Superior Court judge. The first allowed the motion of Michael Kinchla to dismiss their August 20, 1999, complaint against him as barred by the doctrine of "res judicata." The second denied their motion for leave to amend that complaint. We conclude that those rulings were legally correct and agree with Kinchla that the appellants' arguments are without merit.

1. *Background.* The appellants were coowners (with Kinchla's father) of a limited liability company, Disola Development, LLC (Disola), organized in January, 1996, to own and operate residential units. Pursuant to an "Operating Agreement," Kinchla and Urdi were authorized to manage Disola. Kinchla obtained short-term mortgage financing, secured by Disola's assets and the coowners' personal guarantees. In December, 1996, Kinchla informed the appellants that Disola would not be able to make payment on the note, due in January, 1997, and that Disola was having difficulty in obtaining replacement financing because the appellants would no longer provide personal guarantees beyond two years. The loan was extended until July, 1997, but Kinchla was unable to obtain additional financing for Disola.

Concerned about imminent foreclosure, the coowners agreed, on Kinchla's recommendation, that Kinchla would purchase or redeem the ownership interests held by the appellants. To implement this transaction, the appellants, each represented by counsel, and Kinchla negotiated and, on August 21, 1997,

executed a "Membership Interest Redemption Agreement" (redemption agreement). Through Kinchla, Disola obtained financing for the redemption (secured in part by personal guarantees of four members of Kinchla's family) and, as of August 21, 1997, the appellants were bought out and their obligations discharged. Sometime after the redemption, the appellants managed to funnel to themselves large sums of money to which they were not entitled under the redemption agreement from several preexisting Disola accounts.

On March 4, 1999, a complaint was filed in Disola's name in the United States District Court for the District of Massachusetts against the appellants, seeking to recover those sums as having been taken in violation of the redemption agreement and the appellants' legal obligations to Disola. The complaint alleged Federal question jurisdiction based on violations of certain Federal statutes (including the Racketeer Influenced and Corrupt Organizations Act [RICO]), as well as State claims for common-law conversion, breach of fiduciary duty, and violation of G. L. c. 93A. The appellants denied all wrongdoing and asserted that their interests in Disola had not in fact been redeemed. They also counterclaimed, alleging that Disola, acting through its "agents," "servants," and "representatives," had refused to provide them with information required to comply with the provisions of the redemption agreement and had failed to give them an accounting of Disola's assets and finances. The only Disola "agent" or "representative" identified in the counterclaim was Kinchla, as Disola's manager and signatory to the redemption agreement.

After the appellants had voluntarily disgorged approximately $118,000 of the disputed funds (at the strong urging of the Federal District Court judge), the case proceeded to a six-day jury trial, which ended on November 14, 2000, with a jury verdict in favor of Disola. In response to a series of special questions, the jury found that (1) there had been a "meeting of the minds" regarding the contract for redemption as set forth in the redemption agreement executed by Kinchla and the appellants; (2) the appellants had "breached" the redemption agreement; and (3) Disola was entitled to damages on account of the sums taken by the appellants in violation of the redemption

agreement. Judgment entered in favor of Disola on December 11, 2000. The appellants appealed only one aspect of that judgment, relating to an award of interest on certain moneys being held at a bank, as to which they prevailed. (The Federal District Court judge had rejected the appellants' counterclaim prior to submitting the case to the jury, and the appellants took no appeal from that action).

Subsequent to the filing of the Federal complaint and well over a year prior to the Federal trial, the appellants commenced two separate actions against Kinchla in Norfolk Superior Court. The first was filed on July 23, 1999. It alleged that Kinchla, acting "at all times" as manager of Disola, had received and converted moneys owed the appellants under the redemption agreement and had engaged in unfair and deceptive acts and practices violative of G. L. c. 93A with respect to their rights under that agreement (including a refusal to render an accounting or pay them the moneys he had withheld). On February 1, 2000, a motion judge dismissed that complaint on the ground of the pendency of the Federal action (pursuant to Mass.R.Civ.P. 12[b][9], 365 Mass. 755 [1974]). The appellants did not appeal from that dismissal.

The second State action was filed on August 20, 1999. It alleged that Kinchla had engaged in behavior "in the course of [his] administration of [Disola]" that constituted a violation of G. L. c. 93A. Specifically, the complaint charged that Kinchla had misrepresented the imminence of the threat of mortgage foreclosure in order to precipitate the execution of the redemption agreement, had failed to provide an adequate appraisal of the appellants' interests in Disola, and had induced them to accept inadequate consideration for the sale of their interests pursuant to that agreement.

As had also been true with respect to their first State action, the appellants did not aver in their second suit that any of their allegations were based on newly discovered evidence or information obtained subsequent to the filing of their counterclaim in the Federal action. Their pleading also made no attempt to reconcile their claims with the "representations and warranties" they had each made in the redemption agreement (with the assistance of counsel), declaring that each of them

was "fully familiar with the financial condition, business, affairs and prospects of [Disola], has made all such investigation thereof as [he] deems to be appropriate and is desirous of no further information in regard thereto."

After Kinchla filed a motion to dismiss the second complaint pursuant to rule 12(b)(9), a second Superior Court judge ordered the appellants to file a more definite statement pursuant to Mass. R.Civ.P. 12(e), 365 Mass. 756 (1974). That statement asserted, in nonverified form and again contrary to their explicit representations in the redemption agreement, that they had executed the redemption agreement as the result of Kinchla's coercive manipulation of Disola, particularly his false and incomplete representations to them regarding Disola's financial condition. Kinchla responded by refiling his motion to dismiss, adding as a ground the failure of the complaint to state an actionable claim because of the applicability of the res judicata bar.

As a result of scheduling complications (including one-half dozen continuances obtained by the appellants), it was two years before anything further took place in the second State action. In February, 2002, just before the sixth scheduled hearing on Kinchla's motion to dismiss was to be held, the appellants moved to amend their complaint and add as party defendants Kinchla's wife, father, and brother, on the theory that Kinchla was also acting as agent for the other members of his family when he made false and incomplete statements to the appellants in connection with the redemption agreement.

On February 20, 2002, the first Superior Court judge allowed Kinchla's motion to dismiss the appellants' second State complaint on the ground that the action was barred by the December 11, 2000, Federal judgment, under the doctrine of res judicata. The judge denied the appellants' motion to amend the complaint without written decision.

The appellants here contend that the motion judge erred in dismissing their complaint on the basis of res judicata and abused her discretion in denying their motion to amend the complaint. We disagree and conclude that the judge appropriately responded to the appellants' disfavored claim splitting contrary to well-established doctrine and policy.

2. *Discussion.* As a preliminary observation, we note that neither party has addressed, in a manner complying with Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), the issue whether the claims in the appellants' second State action should have been asserted as compulsory counterclaims in the Federal action. See Fed.R.Civ.P. 13(a). The claims in the second State action were grounded in allegations of Kinchla's maladministration of Disola to achieve personal gain at the expense of the appellants, particularly his alleged wrongdoing in connection with the redemption agreement. As such, the State claims plainly appear to have "arise[n] out of the transaction or occurrence that [was] the subject matter of the [Disola] claim," *ibid.,* in the Federal action, namely, the alleged mishandling of Disola assets by the appellants in violation of the redemption agreement, particularly by their unilaterally obtaining more Disola funds for themselves than they were entitled to under that agreement.

There was such a "logical relationship" between the appellants' State claims and Disola's Federal claim that the former clearly should have been added as compulsory counterclaims to the appellants' answer in the Federal action. See *Moore* v. *New York Cotton Exch.,* 270 U.S. 593, 610 (1926) ("That [the essential facts underlying the two sets of claims] are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter"). "If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it would be a matter for a state court." *Baker* v. *Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n.1 (1974). *Iglesias* v. *Mutual Life Ins. Co. of N.Y.,* 156 F.3d 237, 241 (1st Cir. 1998), cert denied, 528 U.S. 812 (1999). (As to ancillary jurisdiction, see *infra* at 565-566.)

The failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim. See *Baker* v. *Gold Seal Liquors, Inc., supra*; Restatement (Second) of Judgments § 22(2)(a) and comment e (1982). (It should be noted that the fact Kinchla was not an original party plaintiff in the Federal action would not prevent such a bar. See Fed.R. Civ.P. 13[h], authorizing an additional party over whom the Federal court can acquire jurisdiction to be brought in as an opposing party for the purpose of responding to a compulsory

counterclaim, at least an additional party who is in an adversarial relationship with the counterclaimant by virtue of his direct personal benefit in any judgment. See also 28 U.S.C. § 1367, discussed *infra* at 566. Cf. *Scott* v. *United States*, 354 F.2d 292, 300-301 [Ct. Cl. 1965].) Because, however, the parties have failed to address this potentially outcome-determinative issue with any coherence, we do not rely on it and proceed to an analysis of preclusion principles.

"When a State court is faced with the issue of determining the preclusive effect of a Federal court's judgment, it is the Federal law of res judicata which must be examined." *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 449 (1982). See *Yankee Microwave, Inc.* v. *Petricca Communications Sys., Inc.*, 53 Mass. App. Ct. 497, 507 (2002); *Apparel Art Intl., Inc.* v. *Amertex Enterprises Ltd.*, 48 F.3d 576, 582 (1st Cir. 1995). The term "res judicata" includes both claim preclusion, also known as true res judicata, and issue preclusion, traditionally known as collateral estoppel. See *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, *supra* at 449; *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 637 (1998). The trial court's decision was correct on this record under both legs of preclusion doctrine. See *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993) (judgment of dismissal can be affirmed on any ground apparent on the record that supports the result reached in the trial court).

a. *Issue preclusion.* The judge correctly determined that the Federal proceeding necessarily involved and decided the core issue of fact essential to the judgment in that case — and equally central to the two State actions — namely, that the appellants incurred enforceable contractual liability, and received the consideration to which they were entitled, under the redemption agreement. Consequently, the Federal judgment precluded relitigation in the second State action of all issues relating to the validity of the appellants' consent to and engagement in that agreement. Despite the State action's assertion of a different legal theory (that the appellants' contractual obligations and rights were both impaired and negated by Kinchla's fraudulent conduct), the appellants' second salvo of State claims was unmistakably aimed at Kinchla, the very "agent" or "represen-

tative" of Disola who was identified with the misdeeds set forth in the Federal counterclaim and who was alleged to have acted in the same capacity and to the same effect with respect to the redemption agreement in both actions, i.e., as Disola's manager and to the appellants' financial disadvantage. See, as to the elements of issue preclusion, *Allen* v. *McCurry*, 449 U.S. 90, 94-95 (1980); *Heacock* v. *Heacock*, 402 Mass. 21, 25 (1988); *Jarosz* v. *Palmer*, 436 Mass. 526, 530-535 (2002); *Hartford* v. *Hartford*, *ante* 446, 450-451 (2004).

The appellants' protest that the judge erred in relying on issue preclusion because Kinchla was not named a defendant in the Federal action is unpersuasive. Neither Federal nor Massachusetts law requires precise identity or mutuality of parties for application of issue preclusion, at least when it is raised defensively against complainants who had a full and fair opportunity to litigate all of their grievances arising out of the same transaction at issue in both cases (here, the propriety of Kinchla's management of Disola in connection with the execution and implementation of the redemption agreement). See *Blonder-Tongue Labs., Inc.* v. *University of Ill. Foundation*, 402 U.S. 313, 328-329 (1971); *Montana* v. *United States*, 440 U.S. 147, 154-155 (1979); *Allen* v. *McCurry*, *supra*; *Martin* v. *Ring*, 401 Mass. 59, 61 (1987); *National Labor Relations Bd.* v. *Donna-Lee Sportswear Co.*, 836 F.2d 31, 34-35 (1st Cir. 1987); Restatement (Second) of Judgments § 29 (1982).

b. *Claim preclusion.* "Simply stated, if a set of facts gives rise to a claim based on both State and Federal law, and the [claimant] brings the action in a Federal court which had 'pendent' jurisdiction to hear the State claim, but the [claimant] declines to assert such State claim, he may not subsequently assert the State ground in a State court action." *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. at 450. See *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. at 638. ("Pendent jurisdiction" is the doctrine that, in the interest of avoiding piecemeal litigation, permits a plaintiff who properly invokes the jurisdiction of the Federal court to join sufficiently related State claims to his Federal claim against the defendant; see *United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 724-725 & n.13 [1966], quot-

ing from *Baltimore S.S. Co.* v. *Phillips*, 274 U.S. 316, 320 [1927] [emphasizing that the Federal Rules of Civil Procedure "embody 'the whole tendency of our decisions . . . to require a plaintiff to try his . . . whole case at one time' "].)

"The exception to this rule [of claim preclusion] is that if the Federal court in the first action would *clearly* not have had jurisdiction to hear the State claim or, if having jurisdiction, *clearly* would have declined to exercise it as a matter of discretion, then a second action in a State court should not be precluded" (emphases added). *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. at 450. That exception has no application to these facts.

The Federal court unquestionably had pendent jurisdiction to hear the State claims brought by the appellants in their second State case, as evidenced by its actual exercise of such jurisdiction with respect to all of Disola's State claims in the Federal complaint, including the counts for conversion, breach of fiduciary duty, and G. L. c. 93A violations, as well as the State counterclaim counts interjected by the appellants. Even in a close case (which this is not), "it is appropriate for the rules of res judicata to compel the [claimant] to bring forward his state theories in the federal action, in order to make it possible to resolve the entire controversy in a single lawsuit." *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc., supra* at 452, quoting from Restatement (Second) of Judgments § 25, Reporter's Note 228 (1982).

Indeed, such compulsion has been even more appropriate since the 1990 codification of the doctrine of pendent jurisdiction in 28 U.S.C. § 1367 as a species of "supplemental jurisdiction." In that statute, Congress not only created a strong presumption in favor of the adjudication of all related State claims in Federal court, by the juxtaposition of § 1367(a) (granting such jurisdiction in mandatory terms) and § 1367(c) (subjecting the Federal District Court judge's discretion to decline to exercise supplemental jurisdiction to relatively strict standards), but also explicitly provided that supplemental jurisdiction "shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a) (1993).

Since there seems little question that the Federal court would

have extended its exercise of pendent jurisdiction over the substantially related (if not identical) State claims raised by the appellants in their second State complaint (see *infra* at 570-572), the issue becomes whether res judicata was appropriately raised by Kinchla as a defense to that complaint. Under the Federal law of claim preclusion, final judgment on the merits of an action bars the parties or their privies from relitigating claims that were or could have been raised in that action. *Porn* v. *National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996). See *Yankee Microwave, Inc.* v. *Petricca Communications Sys., Inc.*, 53 Mass. App. Ct. at 508. Compare *Heacock* v. *Heacock*, 402 Mass. at 23 ("This is so even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim, or seeks different remedies"); *Bendetson* v. *Building Inspector of Revere*, 36 Mass. App. Ct. 615, 618-619 (1994); *Tinkham* v. *Jenny Craig, Inc.*, 45 Mass. App. Ct. 567, 571 (1998). "The policy . . . behind res judicata is to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' " *Bay State HMO Mgmt., Inc.* v. *Tingley Sys., Inc.*, 181 F.3d 174, 181 (1st Cir. 1999), cert. denied sub nom. *CSC Consulting, Inc.* v. *Tingley Sys., Inc.*, 528 U.S. 1187 (2000), quoting from *Apparel Art Intl., Inc.* v. *Amertex Enterprises Ltd.*, 48 F.3d at 583, quoting from *Allen* v. *McCurry*, 449 U.S. at 94. Res judicata will be employed by the courts to prevent the splitting of a cause of action where the party to be precluded (here the appellants) had both the opportunity and the incentive to litigate all related matters fully in the original lawsuit. *Heacock* v. *Heacock*, 402 Mass. at 24.

The essential elements of claim preclusion are "(1) a final judgment on the merits in [the first] action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both the earlier and later suits." *Aunyx Corp.* v. *Canon U.S.A, Inc.*, 978 F.2d 3, 6 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993). See *Gonzalez* v. *Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir. 1994); *Porn* v. *National Grange Mut. Ins. Co.*, 93 F.3d at 34. It is indisputable that final judgment entered in the Federal action against the appellants with respect to the validity of the redemption agreement and the distribution of funds thereunder, thus satisfying the first element of the test.

1. *Identity of the parties.* As they did in contesting issue preclusion, the appellants stress that Kinchla was not named a party in the original Federal suit or in their counterclaim and that they sought to hold him liable in the second State action for having acted in his personal interest (although that complaint alleged that he committed the claimed misdeeds "in the course of [his] administration of the Company" as its manager). As a consequence, they contend, he cannot raise res judicata as a bar because there was not an identity of the parties or their privies in the two actions. Their position rests on a misreading of applicable Federal precedent.

In the era prior to modern procedural reform, courts focused on whether nonparties to an original suit who sought to use claim preclusion as a defense to a later action were "in privity" with a party in the earlier litigation. The modern Federal doctrine of "nonmutual claim preclusion," however, permits a person who was not named a party in a prior action, here Kinchla, to raise the defense of claim preclusion in a subsequent suit involving sufficiently related subject matter (see *supra* at 563-564). See *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10 (1st Cir. 1988) ("[T]he question is whether a form of 'nonmutual claim preclusion' is appropriate, i.e., whether a party not involved in the earlier action may deflect this [present] lawsuit because he should have been, but was not, included in the earlier suit. . . . [P]reclusion is appropriate . . . 'if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance,' 18 Wright & Miller, [Federal Practice and Procedure] § 4464, at 589 [1981]"). The person who was not a party in an earlier action may raise preclusion in a subsequent action if the claimants in that action have a close and significant relationship with the original claimants or when "the party against whom [claim preclusion] is asserted had a full and fair opportunity for judicial resolution of the same issue" in the earlier action. *In re El San Juan Hotel Corp.*, 841 F.2d at 10 n.8, and cases cited.

The appellants' reliance on the fact that Disola and Kinchla acting as its manager were not legally identical persons is unavailing. Disola was an entity owned by the appellants and

Kinchla's father but was, so far as the pleadings in this case and the record in the Federal proceeding revealed, managed by Kinchla in a manner that evinced his substantial, if not total, control of Disola, at least in connection with all aspects of the redemption agreement. As noted earlier, the appellants' second State complaint itself averred that Kinchla's allegedly actionable conduct occurred "in the course of [his] administration" of Disola, as had their first State complaint.

It defies common sense and the policies behind the doctrine of res judicata, as well as the realities reflected in this record, for the appellants to argue that there was a meaningful distinction between Kinchla acting as Disola's manager in engineering the redemption agreement and Kinchla "manipulating" Disola to secure a personal financial interest by means of effecting the redemption agreement. To the contrary, Kinchla's relationship both to Disola and to the allegations of misconduct in the appellants' several litigations was sufficiently identical to warrant the application of Federal nonmutual party preclusion. To the extent Kinchla (allegedly on his own behalf and that of his family members) obtained legal as well as practical control of Disola as a result of the redemption agreement — a circumstance known to the appellants at the time they brought their counterclaim in the Federal action — that relationship virtually approached alter ego status. In rebuffing the appellants' claim for additional payments under the redemption agreement and in pursuing disgorgement by them of amounts owed to Disola, Kinchla (on the appellants' own averments) and Disola had essentially coincident financial interests, and if for no other reason, Kinchla could justifiably be seen as acting as Disola's de facto representative in the Federal action. See *In re Iannochino*, 242 F.3d 36, 45-46 (1st Cir. 2001).

In light of that relationship, it would be vexatiously unfair to Kinchla and a waste of judicial resources to allow the appellants to bring multiple, serial actions based upon Kinchla's theoretically distinct capacities in the two suits. The central factual issue in both cases was the same: Kinchla's allegedly inappropriate course of conduct relating to the same underlying transaction, the buyout of the appellants' interests in Disola pursuant to the redemption agreement. Had the appellants

pressed even their limited Federal counterclaim in the normal course, the requested accounting and professionally competent discovery regarding Disola's finances would have inevitably revealed any arguably actionable behavior on Kinchla's part, whether he had acted solely as Disola's manager or on his own account as a person with a prospective financial interest in Disola.

On the facts and allegations in this record, nonmutual claim preclusion applies to the appellants' second State action because the "new" defendant, Kinchla, had an indisputably "close and significant relationship" with Disola, see *In re El San Juan Hotel Corp.*, 841 F.2d at 10, the defendant in counterclaim in the Federal case; and because the appellants had a full and fair opportunity in the Federal proceeding to litigate all of their claims against Kinchla concerning his role in the redemption agreement. See *ibid.* (defendant in the first action was accused of wrongdoing as a trustee in bankruptcy; defendant in the second action was the trustee's attorney accused of facilitating that wrongdoing but was permitted to raise claim preclusion as a defense based on the judgment in the first action because of his "close and significant relationship with the original defendant[]'"); *Gonzalez* v. *Banco Cent. Corp.*, 27 F.3d at 758 (sufficient "privity" exists to allow a "new" defendant in a second action to assert the bar of res judicata if, though a non-party, he "substantially controlled a party's involvement in the initial litigation . . . . If a nonparty either participated vicariously in the original litigation by exercising control over a named party or had the opportunity to exert such control, then . . . it is appropriate to impute to him the . . . attributes of party status for purposes of claim preclusion").

2. *Identity of the cause of action.* "To determine whether sufficient subject matter identity exists between an earlier and a later suit, federal courts employ a transactional approach." *Gonzalez, supra* at 755. "This approach recognizes that a valid and final judgment in an action will extinguish subsequent claims 'with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' " *Ibid.*, quoting from *Manego* v. *Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir. 1985), cert. denied, 475 U.S. 1084 (1986). See Restatement

(Second) of Judgments § 24 (1982). Further, "[t]o bring claim preclusion into play, a cause of action need not be a clone of the earlier cause of action." *Massachusetts Sch. of Law at Andover, Inc.* v. *American Bar Assn.*, 142 F.3d 26, 38 (1st Cir. 1998).

We conclude that the facts that underpin the appellants' claims of fraud and G. L. c. 93A violations in the action before us unquestionably arise from the same nucleus of operative facts as those that were or could have been adjudicated in the Federal suit.

What factual grouping constitutes a "transaction" is to be determined pragmatically, giving weight to such factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Restatement (Second) of Judgments § 24 (1982). See *Bendetson* v. *Building Inspector of Revere*, 36 Mass. App. Ct. at 619-621; *Aunyx Corp.* v. *Canon U.S.A., Inc.*, 978 F.2d at 6-7; *Gonzalez* v. *Banco Cent. Corp.*, 27 F.3d at 755-756; *Porn* v. *National Grange Mut. Ins. Co.*, 93 F.3d at 34.

The appellants project the instant action as involving facts separate and distinct from those actuating their Federal counterclaim and as being grounded in unrelated transactions. That characterization is belied by their own allegations in this case, is contrary to pragmatic transactional analysis, and fails to acknowledge "that a single transaction or series of transactions can — and often does — give rise to a multiplicity of claims." *Gonzalez* v. *Banco Cent. Corp.*, 27 F.3d at 755.

As earlier noted, the reality underlying this litigation saga is that the redemption agreement constituted the core of each of the appellants' three actions. All of the appellants' allegations cluster around one continuous series of temporally and substantively interrelated transactions and circumstances attending that agreement. All of the issues raised thereby arose out of "the same nucleus of operative facts," *Apparel Art Intl., Inc.* v. *Amertex Enterprises Ltd.*, 48 F.3d at 584, namely, Kinchla's negotiation, execution, and implementation of the redemption agreement (so that "the witnesses or proof needed in the second action [would] overlap substantially with those used in the first

action, [which is another reason why] the second action should ordinarily be precluded." *Porn* v. *National Grange Mut. Ins. Co.*, 93 F.3d at 36). All of the appellants' claims based on that common nucleus of fact could, therefore, and should have been brought in the original Federal litigation, where they would have formed a rational and convenient trial unit that would have appropriately conserved the parties' as well as judicial resources.

c. *Denial of motion to amend.* The appellants have failed to bear their burden of demonstrating that the Superior Court judge's denial of their motion to amend their complaint in the second action was an abuse of discretion. Notwithstanding the absence of an explicit statement of reasons for that denial, "[j]ustification for the judge's action appears in the record before us." *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291 (1977). As Kinchla points out, the underlying allegations of the would-be amended complaint were in substance identical to those set forth in the appellants' Federal counterclaim and first State action, in that they all emerge from Kinchla's supposed conduct in managing Disola so as to deceive and manipulate the appellants into agreeing to an unfavorable redemption agreement. Those allegations, therefore, failed to state a viable claim because they would have been futilely raised, in that they would not have survived a motion to dismiss on preclusion grounds for all of the reasons set forth above. See *United States Leasing Corp.* v. *Chicopee*, 402 Mass. 228, 233 (1988); *Bass River Lobsters, Inc.* v. *Smith*, 7 Mass. App. Ct. 197, 198 (1979); *Ware Sav. Bank* v. *Krupp*, 8 Mass. App. Ct. 874 (1979). We note, additionally, that the appellants "ha[ve] cited no authority holding that, in reasonably comparable circumstances, a trial judge abused his discretion in denying a motion to amend." *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. at 292.

*Judgment affirmed.*

*Order denying motion for leave to amend complaint affirmed.*