Kenton-Walker, Janet, J.

INTRODUCTION

This is a claim pursuant to the provisions of the Massachusetts Uniform Fraudulent Transfer Act, G.L.c. 109A seeking to avoid a transfer of real estate from J.W. Boudreau Corporation a/k/a James W. Boudreau Corporation (the “Debtor Corporation”) to James W. Boudreau and Beverly Boudreau. The plaintiff, Barbara A. Fini, as Trustee of the Moben Realty Trust (the “Trust”) is seeking summary judgment against the defendants in the amount of almost $260,000 to be enforced against the alleged illegally transferred real estate located at 2 Aaron Street, Fra-mingham, Massachusetts (the “Property”). The Debtor Corporation and James Boudreau are requesting summary judgment claiming that the Trust’s claims are barred by the doctrine of claim preclusion and that there was reasonably equivalent value for the transfer of the Property. In addition, the Debtor Corporation and James Boudreau move to strike a portion of Beverly Boudreau’s answers to the Trust’s request for admissions. After hearing, and for the reasons set forth below, the Trust’s motion for summary judgment is DENIED; Debtor Corporation’s and James Boudreau’s cross motion for summary judgment is ALLOWED in part and DENIED in part; and the motion to strike is DENIED.

BACKGROUND

The ultimate issues in this matter are whether or not there was a fraudulent transfer of the Property by the Debtor Corporation to the two individual defendants, James and Beverly Boudreau, and as a result of that alleged fraudulent transfer, are the defendants responsible for the payment of a judgment obtained by the Trust against the Debtor Corporation.[1] Also at issue is the amount of the judgment actually owed to the Trust to be satisfied from the voidance of the alleged fraudulent transfer. The Trust asserts that the Debtor Corporation is indebted to the Trust on a judgment of over $106,000 together with post-judgment interest bringing the total to approximately $260,000, and that because the transfer of the Property by the Debtor Corporation to the individual defendants was a fraudulent transfer within the meaning of G.L.c. 109A, §6(a), the transfer must be set aside, or the Property sold, in order to satisfy that outstanding judgment. The Debtor Corporation and James Boudreau contend, however, that the transfer of the Property was made for reasonably equivalent value and was, therefore, not a fraudulent transfer. They also argue that the amount owed to the Trust is only around $5,600.
The Debtor Corporation was incorporated in Massachusetts in May 1981. James and Beverly Boudreau were officers of the Debtor Corporation. In May 1994, the Debtor Corporation was voluntarily dissolved. At the time of dissolution, the Debtor Coporation held title to the Property, encumbered by a recorded mortgage held by Beverly Boudreau for $100,000.
In 1990, the Trust brought an action against the Debtor Corporation for breach of a construction contract and in 1996 obtained judgment against the Debtor Corporation in excess of $106,000 (the “First Action”). The Trust obtained an execution. While the First Action was pending, James Boudreau and another set up a new corporation, Boudreau & Associates, Inc. (the “New Corporation”), and allegedly transferred assets from the Debtor Corporation to the New Corporation.[2] The assets transferred did not include the Property.
In 1999, the Trust brought an action (the “Second Action”) against the New Corporation, the Debtor Corporation, James Boudreau, and another individual, seeking to set aside the transfer of assets to the New Corporation on the basis that those transfers were fraudulent. The Second Action sought to collect the First Action judgment of $106,000 that the Trust held against the Debtor Corporation. On July 28, 2004, the Trust and the defendants in the Second Action entered into an agreement for judgment, which provided:
Now come the parties in the above captioned matter and respectfully request this . . . Court enter final Judgment for the Plaintiff against the Defendants ... in the amount of $7,500.00, to be paid to the Plaintiff... in twelve equal installments over a one year period beginning August 1, 2004 and continuing and due the first of each month thereafter. *45 This judgment to be entered with prejudice and further all parties acknowledge and waive their right to appeal this judgment.
While the Second Action was pending, James and Beverly Boudreau became engaged in a divorce proceeding. In June 2004, James and Beverly Boudreau filed an application to revive the Debtor Corporation for the purpose of conveying the Properly. The application was allowed and on July 26, 2004, the Debtor Corporation conveyed the Property to James and Beverly Boudreau as tenants in common for “consideration of less than one hundred dollars.”
In December 2004 James and Beverly finalized their divorce by entering into a separation agreement, which was incorporated into the judgment of divorce. As part of the division of assets, the parties agreed that the Property would be sold and the net proceeds divided equally between them. Acknowledging that Beverly held a mortgage on the property, the parties further agreed that she would relinquish all right and interest she may have had to collect any unpaid principal and interest, and she would execute a discharge upon conveyance.
On or about March 15, 2007, as part of a resolution of a contempt proceeding arising from the divorce, James and Beverly entered into a stipulation in which it was agreed that James had the option of paying Beverly $60,000 in exchange for Beverly conveying all of her right, title and interest in the Property to James. The $60,000 represented Beverly’s share of the equity in the Property. James subsequently paid Beverly the $60,000. Beverly was prepared to execute a deed to convey the Property to James, however, this lawsuit was commenced and that transfer has not occurred.
Beverly Boudreau moved for summary judgment alleging that the transfer of the Property occurred pursuant to an order of the Probate and Family Court and, therefore, could not be a fraudulent transfer. In June 2008, this court (McCann, J.) denied that motion, ruling that the transfer at issue in this case was the transfer from the Debtor Corporation to the individuals in July 2004, months before the divorce was finalized, and was not pursuant to a court order.[3]

DISCUSSION

I. Standard of Review

Summary judgment shall be granted where there are no genuine issues of any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of her case at trial. Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).

II. Res Judicata

The term “res judicata” includes both claim preclusion and issue preclusion. See Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988). Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action. O’Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998), quoting Blanchette v. School Comm. Of Westwood, 427 Mass. 176, 179 n.3 (1998). This is based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit. O’Neill v. City Manager of Cambridge, supra, quoting Heacock v. Heacock, supra, at 24. The invocation of claim preclusion requires three elements; (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits. DaLuz v. Department of Correction, 434 Mass. 40, 45 (2001), quoting Franklin v. North Weymouth Coop. Bank, 283 Mass. 275, 280 (1933).
Similarly, “issue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.” Heacock v. Heacock, supra at 23 n.2. Before precluding a party from relitigating an issue, a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998), and cases cited. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment. Id. at 134-35, and cases cited. Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. See Fidelity Mgt. Research Co. v. Ostrander, 40 Mass.App.Ct. 195, 199 (1996).
This doctrine has been extended to situations where there is neither a full trial nor a judgment on the merits. For example, an agreement for judgment “is binding and conclusive upon the parties as if it had been entered after a trial and a determination of the issues.” Fishman v. Athens, 321 Mass. 280, 281 (1947). The agreement represents the intent of the parties as to the issues that will be precluded. Pinshaw v. Metropolitan Dist. Com., 402 Mass. 687, 697 n.14 (1988). It serves as a waiver of all matters within the *46 scope of that judgment. Levy v. Crawford, 33 Mass.App.Ct. 932, 933 (1992), citing Kacouris v. Loukas, 333 Mass. 44, 49 (1955). This doctrine provides that whatever issues were raised in the pleadings by either party are considered to be within the agreement for judgment and will be precluded from further litigation regardless of whether the agreement for judgment specifically refers to those issues in the pleadings. See Possehl v. Ossino, 28 Mass.App.Ct. 918, 919 (1989) (negligence claim existing in the pleadings during the execution for an agreement for judgment, which did not expressly preclude a negligence claim, was precluded in a later Superior Court action). The doctrine reflects the concern of courts that parties not be permitted to take a “second bite at the apple.” Davignon, 176 F.Sup.2d at 85. See also Possehl, 28 Mass.App.Ct. at 918.
The Debtor Corporation and James Boudreau (the “defendants”) argue that the Trust’s claim against them in this action is the same claim the Trust brought in the Second Action — -to set aside a fraudulent transfer in order to recover on a previously obtained judgment.[4] Because the Second Action was an action to set aside the fraudulent transfer of assets from the Debtor Corporation in order to satisfy the judgment the Trust had against the Debtor Corporation from the First Action, and because there was a final judgment entered in the Second Action, the defendants contend that the Trust is precluded from bringing this action.
Based on the record before the court, there is no dispute that there is identify of parties in both this action and in the Second Action and that a final judgment was reached in the Second Action.[5] The only question is whether there is identity between the claim in this action and the claim in the Second Action. In determining whether there is sufficient identify of the causes of action, courts adopt a transactional approach to “extinguish subsequent claims ‘with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.’ ” Mancuso v. Kinchla, 60 Mass.App.Ct. 558, 570 (2004) (citations omitted).
The facts that gave rise to the Second Action involved events that occurred prior to 1995, namely that the New Corporation was formed and assets from the Debtor Corporation were fraudulently transferred to the New Corporation.[6] At the time of those events, and at the time the Second Action was filed, the Property had not been transferred and title remained in the name of the Debtor Corporation. Title to the Property was not transferred until two days prior to the Agreement for Judgment in the Second Action. Comparing the facts that gave rise to the Second Action with the facts that gave rise to this action, this court must give weight to “whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties’ expectations.” Mancuso v. Kinchla, 60 Mass.App.Ct. at 571. After examining the transactions that gave rise to the Second Action and this action, this court is not persuaded that the two have identity. Given that the alleged fraudulent transfer of the Property occurred just before the Agreement for Judgment was signed and entered, the parties could not have expected that the transfer of the Property would be part of the alleged transfers that gave rise to the Second Action, and resolved by way of the judgment in that case. The defendants’ contention that this action is barred under a theory of claim preclusion has no merit.
Although the elements necessary to establish claim preclusion have not been established, the undisputed facts in this case do give rise to issue preclusion. As discussed above, “issue preclusion may be used defensively if (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment.” Green v. Town of Brookline, 53 Mass.App.Ct. 120, 123 (2001), citing Martin v. Ring, 401 Mass. 59, 60-61 (1987); Commissioner of the Dept. of Employment & Training v. Dugan, 428 Mass. 138, 142 (1998).
This action and the Second Action are both actions to collect on a judgment. The Second Action sought recovery from the defendants, as well as the New Corporation and one of its officers, of the $106,000 judgment from the First Action. This action seeks the same, collection of the $106,000 together with all the postjudgment interest. There was a final judgment on the merits in the Second Action by way of an agreement for judgment and that agreement for judgment served as a waiver of all matters within the scope of that judgment. See Fishman v. Athens, 321 Mass. at 281; Kacouris v. Loukas, 333 Mass. 44, 49 (1955). The judgment in the Second Action, however, was for $7,500, not for the $106,000 originally sought in that complaint. The issue as to what amount the Trust was owed, therefore, was resolved by that judgment and the Trust cannot relitigate that issue in this action because the Trust was a party to that Second Action, the issue is identical to the one in this case, and the amount owed was essential to the judgment in the Second Action. The court is not persuaded by the Trust’s arguments that the execution in the First Action was never returned satisfied, that there was no release signed, or that because the defendants failed to live up to the payment terms that the judgment in the Second Action is void, or that it is unfair.[7] Because all of the elements for issue preclusion are met, the Trust is barred from relitigating the amount it is owed and the defendants are entitled to summary judgment on that issue.

*47
III. Fraudulent Transfer

Under G.L.c. 109A, §6(a), “[a] transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred ... if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.” The Trust asserts there is no dispute that the Debtor Corporation owed a claim to the Trust prior to the transfer of the Property, that the transfer of the Property to James and Beverly Boudreau was for less than reasonable equivalent value and that the Debtor Corporation was rendered insolvent by that transfer. The defendants in their cross-motion assert that there was reasonable equivalent value for the transfer.
Based on the summary judgment record, there is a genuine issue of fact as to whether the transfer of the Property was for reasonable equivalent value. The affidavit of James Boudreau has been offered to show that the Property was so heavily encumbered that there was no equity so that the transfer for $1.00 was reasonably equivalent value. Also, that the transfer relieved the Debtor Corporation of the debt associated with the Property, representing reasonably equivalent value. A significant portion of that alleged debt was the mortgage held by Beverly Boudreau. In her response to the Trust’s requests for admissions, Beverly Boudreau denies that she lent $100,000 to the Debtor Corporation. Because there is a genuine issue of fact as to encumbrances on the Property, there is also a genuine issue of fact as to whether the transfer was for reasonably equivalent value. For these reasons, both motions for summary judgment on this issue must be denied.

TV. Motion to Strike

The Debtor Corporation and James Boudreau have moved to strike certain of Beverly Boudreau’s responses to the Trust’s requests for admissions. After a review of the pleadings and considering the disputed facts in this case, the motion to strike is denied.

ORDER

For the foregoing reasons, it is hereby ORDERED that Trust’s motion for summary judgment is DENIED; the Debtor Corporation and James Boudreau’s cross-motion for summary judgment is ALLOWED in part and DENIED in part; and the defendants’ motion to strike is DENIED.

 James Boudreau and Beverly Boudreau were husband and wife at the time of the alleged fraudulent transfer.

 Beverly Boudreau was not involved in any capacity with the New Corporation.

 In denying Beverly Boudreau’s motion for summaryjudgment, this court stated that it was undisputed that the Debtor Corporation transferred the Property to James and Beverly Boudreau for less than equivalent value and at the time of the transfer the Trust had an outstanding judgment against the Debtor Corporation. The court also stated that the only remaining element in dispute was whether the Debtor Corporation was insolvent prior to the transfer or became insolvent as a result of the transfer. While the court may have found in Beverly’s motion that most of the elements of a fraudulent transfer were undisputed, the Debtor Corporation and James Boudreau did not join in that motion and assert in their opposition to the Trust’s present motion that there was reasonable equivalent value for the transfer.

 Beverly Boudreau has not joined in this motion for summary judgment, so that the reference to “defendants” in the rest of this decision refers to the Debtor Corporation and James Boudreau.

 There is a dispute between the parties as to the meaning of the judgment in the Second Action, which this court addresses infra.

 It is undisputed that the New Corporation was incorporated in 1993. The First Action was still pending when the alleged fraudulent transfer of assets from the Debtor Corporation to the New Corporation was made. The Second Action was filed in 1999.

 The timing of the transfer of the Property — just two days prior to the Agreement for Judgment — is not insignificant and raises serious questions of fraud surrounding the execution of the Agreement for Judgment. The appropriate remedy, however, is to challenge that Agreement for Judgment, which the Trust considered doing by serving the defendants in the Second Action with a motion to set aside the judgment pursuant to Mass.R.Civ.P. 60. That motion, however, was never filed with the court. It is also noteworthy that there was no agreement of the parties, or language in the Agreement for Judgment, to support the Trust’s position that if the defendants failed to make timely payments as required in the judgment that the amount owed to the Trust would be the original $106,000. There was nothing prohibiting the parties from agreeing to such a judgment, but they did not.