FRANCIS WOODBRIDGE, SR., conservator,[1] vs. WORCESTER
STATE HOSPITAL & another.[2]

Worcester.    April 8, 1981. — July 9, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Governmental Immunity.   Commonwealth*, Liability for tort.   *Actionable Tort.   Jurisdiction*, Civil rights.   *Mental Health.*

General Laws c. 123, § 23, which enunciates certain rights of patients in
    the care of the Department of Mental Health, contains no waiver of
    sovereign immunity so as to permit an action for damages against the
    Commonwealth for violation of those rights.   [40-45]

CIVIL ACTION commenced in the Superior Court Department on February 25, 1980.

The case was heard by *Meagher, J.*, on a motion to dismiss.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Michael N. Abodeely, Jr.*, for the plaintiff.

*Nicholas P. Arenella*, Assistant Attorney General (*Jonathan Brant*, Special Assistant Attorney General, with him) for the defendants.

NOLAN, J.   The plaintiff appeals from the dismissal of a tort action brought against the Commonwealth and Worcester State Hospital (hospital).[3]   The sole question raised is whether, by the enactment of G. L. c. 123, § 23,

---

[1] Of the estate of Francis Woodbridge, Jr.

[2] Commonwealth of Massachusetts.

[3] The plaintiff's case against a third defendant, Dr. Marie Sauzier, remains undisturbed by this judgment because the trial judge noted that there was "no just reason for delay" in permitting judgment to be entered

inserted by St. 1970, c. 888, § 4, which enunciates certain rights of patients in the care of the Department of Mental Health (department), the Commonwealth has consented to answer in damages for a denial of those rights. Because we conclude that the Legislature, in enacting G. L. c. 123, § 23, intended no waiver of sovereign immunity, we affirm the dismissal of this action against the State defendants.

We treat the action of the trial judge as a dismissal for failure to state a claim on which relief can be granted,[4] and thus assume the truth of the plaintiff's allegations. See *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 613 (1973); Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

---

in favor of some but not all defendants. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).

For purposes of our discussion of sovereign immunity, we treat the defendant Worcester State Hospital on the same footing as the Commonwealth because the hospital is conceded to be a State facility.

[4] The answer filed jointly by the Commonwealth and the hospital is prefaced with a clause purporting to "[preserve] all rights to Motion to Dismiss and/or Summary Judgment." It was accompanied by a pleading styled a "motion to dismiss and/or summary judgment," stating as the sole ground for dismissal the Commonwealth's immunity to suits of this nature. After the plaintiff had responded with a "counter affidavit in opposition," the Commonwealth's motion was granted in the form of a summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974).

We hasten to point out that the test differs depending on the procedural mechanism employed. In evaluating a complaint which is tested by a motion to dismiss for failure to state a claim upon which relief can be granted, we apply the rule "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957), quoted with approval in *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). A motion for summary judgment, on the other hand, requires an examination of the pleadings, depositions, answers to interrogatories, admissions and affidavits. There is a binal test: (1) whether there is a genuine issue as to any material fact, and (2) whether the moving party is entitled to a judgment as a matter of law. *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). The imprecise and somewhat artless character of the procedural sequence in this case does not obscure the fact that the sole basis for the judge's order was his conclusion that the action was barred by sovereign immunity, a defense properly raised by a motion pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The result would be no different if the standard for summary judgment were applied.

The plaintiff is the conservator of the estate of Francis Woodbridge, Jr. (Woodbridge). Woodbridge's adult life has been marked by recurring periods of acute mental illness. On the afternoon of February 27, 1977, Woodbridge, believing that he might be suffering a relapse of his illness, voluntarily sought treatment at the hospital. It is unclear what transpired between the time of his arrival and approximately 7 p.m. By that time, however, Woodbridge's behavior had become violent and disruptive. A member of the hospital's medical staff authorized the use of physical restraint, and Woodbridge was stripped of his clothing and placed in a locked seclusion room. One hour and forty-five minutes later, when Woodbridge was removed from seclusion, it was discovered that he had gouged the retinas of both eyes with his thumbs. An attempt at restorative surgery proved unsuccessful, and the prognosis is that Woodbridge will be completely blind for the remainder of his life. This tragedy, it is alleged, was caused by the defendants' negligent failure to exercise due care to prevent this act of self-destruction.

The plaintiff concedes that on the date of Woodbridge's injury, the Commonwealth and the hospital retained a general immunity from tort liability.[5] Furthermore, there is no claim that G. L. c. 123, § 23, or any other provision of that chapter, expressly waives sovereign immunity. Thus, the entire basis of the plaintiff's claim is that the Commonwealth's consent to suit appears by necessary implication from the enunciation of patients' rights in § 23.

Before addressing the plaintiff's arguments in detail, it is useful to place § 23 in the statutory context in which it appears. The section was enacted as one aspect of a general revision of the laws relating to the treatment and commitment of the mentally ill and mentally retarded. See St. 1970, c. 888, § 4. The impetus for this reform was an in-

---

[5] The abrogation of sovereign immunity accomplished by St. 1978, c. 512, § 15, affects only causes of action arising on or after August 16, 1977, and is therefore not involved in this case. See St. 1978, c. 512, § 16.

creasing awareness of the inadequacies, both legal and practical, of then existing legislation in these areas. See the Governor's Message introducing the Mental Health Reform Act of 1970, 1970 House Doc. No. 5021. See generally Walker, Mental Health Law Reform in Massachusetts, 53 B.U.L. Rev. 986, 986-988 (1973).

Consistent with its broad purposes, G. L. c. 123 includes several provisions designed to establish the permissible limits on certain forms of treatment. In particular, § 21 limits the use of physical restraints, including seclusion (see G. L. c. 123, § 1), to emergencies, and provides procedural safeguards to be observed in cases in which it is necessary. Similarly, § 23 lists certain patient rights, or privileges, including the right to send or receive mail, receive visitors, retain certain personal property, and to refuse certain forms of treatment. That section further states that patients shall have "any other rights guaranteed by law" and "any other rights specified in the regulations of the department." By G. L. c. 123, § 2, inserted by St. 1970, c. 888, § 4, the department is required "subject to appropriation, [to] adopt regulations consistent with this chapter which establish procedures and the highest practicable professional standards for the reception, examination, treatment, restraint, transfer and discharge of mentally ill and mentally retarded persons in departmental facilities." The department's current regulations speak of a patient's right to skillful, safe, and humane treatment, 104 Code Mass. Regs. 3.10 (1978), and establish detailed guidelines governing the use of restraint and seclusion, 104 Code Mass. Regs. 3.12 (1978).

The plaintiff would have us find an implied waiver of sovereign immunity in this statutory and regulatory network on two distinct bases. First, the plaintiff argues that § 23 elevates the department's regulatory standards of care to the status of legal rights, and suggests that unless their denial is redressable in damages against the State, such rights would be rendered illusory. Second, the plaintiff asserts that by its mention of "any other rights guaranteed by law," § 23 incorporates by reference a general constitu-

tional right to adequate and humane treatment, and that the Commonwealth has thereby consented to respond in damages for the denial of such treatment.

The rules of construction governing statutory waivers of sovereign immunity are stringent. The Commonwealth "cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed . . . [by] statute." *Broadhurst* v. *Director of the Div. of Employment Security,* 373 Mass. 720, 722 (1977), quoting from *General Elec. Co.* v. *Commonwealth,* 329 Mass. 661, 664 (1953). Consent to suit must be expressed by the terms of a statute, or appear by necessary implication from them. *Smith* v. *Commonwealth,* 347 Mass. 453, 455-456 (1964). *Putnam Furniture Bldg., Inc.* v. *Commonwealth,* 323 Mass. 179, 185-186 (1948). See *George A. Fuller Co.* v. *Commonwealth,* 303 Mass. 216, 224 (1939).

Applying these principles, we think that the Legislature's use of the word "right" will not bear the weight that the plaintiff assigns to it. The tenor of G. L. c. 123 as it relates to patients' rights is one of aspiration and encouragement, rather than of the creation of a formal system of actionable guaranties. Cf. *Pennhurst State School & Hosp.* v. *Halderman,* 451 U.S. 1, 18-22 (1981) (purpose of Congress in enacting a "Bill of Rights" for the developmentally disabled was to encourage, rather than mandate, better services for the affected class). This reading is supported by the language of § 23, which speaks of "rights" and "privileges" interchangeably, and provides that the rights enumerated may be denied for good cause stated in writing.[6] Moreover, G. L. c. 123, § 2, which empowers the department to establish procedures and standards of care, expressly conditions that grant of authority on the availability of funding. In requiring that such standards be the highest practicable,

---

[6] We note that G. L. c. 123, § 23, provides that a patient in the care of the department may not under any circumstances undergo lobotomy or shock treatment without the written consent of his guardian or nearest living relative.

we think that the Legislature did not intend to subject the State to liability in damages for any failure to attain them.

The argument that § 23 incorporates by reference a general constitutional right to treatment, the denial of which gives rise to a cause of action for damages against the State, is still more attenuated. The existence of such a right is by no means established. In the one case which articulated a comparable right and reached the United States Supreme Court, the Court explicitly deprived that holding of any precedential effect. See *Donaldson* v. *O'Connor*, 493 F.2d 507 (5th Cir. 1974), vacated and remanded, 422 U.S. 563 (1975). The Court has this term granted certiorari to consider the question whether any such right inheres in the due process component of the Fourteenth Amendment to the United States Constitution. See *Romeo* v. *Youngberg*, 644 F.2d 147 (3d Cir. 1980), cert. granted, 451 U.S. 982 (1981). In this case, however, the question is not whether such a right exists, but whether the reference in § 23 to "any other rights guaranteed by law" constitutes a consent by the State to be sued in tort for a failure to provide adequate and humane treatment in State mental institutions. We find no basis either in the statutory language or in its history for a necessary implication of such a sweeping waiver of immunity.

Nothing in *Chasse* v. *Banas*, 119 N.H. 93 (1979), cited by the plaintiff, causes us to question our conclusion in this case. There, the Supreme Court of New Hampshire inferred a waiver of sovereign immunity from a statute establishing a general right to "adequate and humane" treatment for patients confined in State mental institutions. Initially, we observe that the case is distinguishable, since nowhere in G. L. c. 123 has the Legislature established such a broad right. More fundamentally, however, we question the conclusion that an action in damages should lightly be inferred from such a statute. In *United States* v. *Testan*, 424 U.S. 392 (1976), the Court rejected a claim that an erroneous classification of government employees would necessarily give rise to an action for back pay. "In a suit against the United States, there cannot be a right to money damages

without a waiver of sovereign immunity, and we regard as unsound the argument . . . that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation." *Id.* at 400-401.

We add that our conclusion does not lead, as the plaintiff argues, to the existence of a right without a remedy. First, we note that actions of this sort are now governed by the provisions of G. L. c. 258. Second, nothing in this opinion is intended to intimate any view as to the effect of G. L. c. 123, § 23, in actions for relief other than damages against the State. Finally, we note that the United States District Court for the District of Massachusetts has recently held that the limitations on the use of seclusion embodied in G. L. c. 123, § 21, give rise to a "liberty interest," the violation of which is actionable under 42 U.S.C. § 1983 (1976). *Rogers* v. *Okin,* 478 F. Supp. 1342, 1374-1375 (D. Mass. 1979), aff'd in part, rev'd in part, 634 F.2d 650 (1st Cir. 1980), cert. granted, 451 U.S. 906 (1981).[7] In sum, we hold

---

[7] The United States Court of Appeals for the First Circuit did not reach the question whether the District Court was correct in concluding that a violation of the restrictions placed on the use of seclusion by G. L. c. 123, § 21, amounted to a constitutional violation; rather, it affirmed the District Court's holding that because the defendants in *Rogers* acted in good faith, no damages could be awarded. *Rogers* v. *Okin,* 634 F.2d 650, 662 (1st Cir. 1980), cert. granted, 451 U.S. 906 (1981). The instant case does not require us to decide whether those provisions of G. L. c. 123 which restrict certain forms of treatment or enumerate patients' rights create guaranties actionable under 42 U.S.C. § 1983 (1976).

It is settled that State courts have concurrent jurisdiction over such claims, *Maine* v. *Thiboutot,* 448 U.S. 1, 3 n. 1 (1980), and that, if a cause of action under § 1983 is stated, a failure to plead the statute should not result in dismissal. *Rzeznik* v. *Chief of Police of Southampton,* 374 Mass. 475, 484-485 n. 8 (1978). In *Quern* v. *Jordan,* 440 U.S. 332, 340-345 (1979), however, the Supreme Court rejected the argument that § 1983 abrogates the traditional sovereign immunity of the States. Because the majority opinion in *Quern* rested in part on the absence of any indication that, in enacting § 1983, the Congress intended to override the States' Eleventh Amendment immunity to suit in Federal courts, the case does not definitively settle the question of what effect § 1983 may have on a State's sovereign immunity where suit is brought in a State court. As is

only that G. L. c. 123, § 23, contains no waiver of sovereign immunity, and therefore affirm the judgment dismissing this action as to the Commonwealth and the hospital.

*So ordered.*

made clear by the concurring opinions of Justices Marshall and Brennan in *Quern* v. *Jordan, supra* at 350-366, however, the majority reaffirmed the Court's prior holding in *Edelman* v. *Jordan,* 415 U.S. 651, 674-677 (1974), that States are not "persons" for purposes of § 1983, and thus are not liable for retroactive awards of damages in suits based on the statute. Pending further clarification from the Supreme Court, we conclude that a State's liability for damages under § 1983 does not depend on whether suit is brought in State or Federal court. See *Thiboutot* v. *State,* 405 A. 2d 230, 236-237 (Me. 1979), aff'd, 448 U.S. 1 (1980); *Edgar* v. *State,* 92 Wash. 2d 217, 221-222 (1979), cert. denied, 444 U.S. 1077 (1980). Thus, even assuming that the complaint here states a claim under § 1983, dismissal of the State defendants would still be required.