Brassard, Raymond J., J.
The plaintiffs, James M. Whalen (“Whalen”) and Laurie L. Whalen (“Laurie Whalen”), brought an eleven-count complaint arising out of the circumstances surrounding Whalen’s layoff from his position as an assistant clerk with the Massachusetts District Court in Springfield. After his layoff, Whalen brought an unsuccessful action in United States District Court for the District of Massachusetts against the Massachusetts Trial Court and four individuals (government officials in their individual capacities), claiming a violation of his federal constitutional rights to due process. In the present action, Whalen raises several additional claims against all but one of the defendants in his federal action, as well as a claim on behalf of his wife, Laurie Whalen. The matter is now before the Court on the defendants’ motion to dismiss. For the following reasons, the defendants’ motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
The following facts, viewed in the light most favorable to Whalen, are derived from the pleadings as well as Whalen’s federal court action, which will be discussed as necessary below.[3]
General Laws c. 218, § 10 provides in pertinent part:
Assistant clerks who were appointed under authority of this section, who are paid by the commonwealth, and who have held said appointment for three consecutive years prior to the effective date of this act shall hold office during good behavior, but subject to applicable retirement laws, and may be removed from office under procedures authorized by section 8 of chapter 21 IB.[4]
General Laws c. 21 IB, §8, which established the Advisory Committee on Personnel Standards (“committee”), provides in pertinent part:
An officer or employee whose appointment is subject to the provisions of this section may be removed for cause by the appointing authority. Every removal of an officer or employee whose appointment was subject to the provisions of this section shall be reviewed by the committee, and no such removal shall be final until approved by the committee. If any such officer or employee has served three full years in a position, appointment to which is subject to the provisions of this section, he shall have the right to appear personally before the committee before said committee reaches its decision as to whether or not to affirm his removal.
Whalen was appointed to the position of Assistant Clerk-Magistrate of the Springfield District Court (the “Court”) on March 27, 1989. In the summer of 2002, administrators for the Massachusetts Trial Court decided that involuntary layoffs would be necessary to close its budget shortfall. Whalen was one of three assistant clerks of the Court chosen for layoff effective September 13, 2002. At least two of the assistant clerks retained by the Court had less seniority than Whalen. Moreover, when additional funds became available to retain one of the three clerks initially selected for layoff, Whalen was passed over in favor of someone with less experience.
Whalen argues that he was wrongly removed from his position because the defendants failed to follow the procedures regarding removals for cause under G.L.c. 218, §10 and G.L.c. 211B, §8. Whalen contends that because he was a “tenured” employee with more than three years of service, his selection for layoff, rather than the selection of a less-senior assistant clerk, was in effect a removal for cause in violation of G.L.c. 218, §10 and G.L.c. 211B, §8.
In Whalen’s federal case, Whalen v. Massachusetts Trial Court 397 F.3d 19 (1st Cir. 2005) (“Whalen F), the defendants initially argued that the removal procedures found in G.L.c. 218, §10 and G.L.c. 211B, §8 did not apply in Whalen’s case because his layoff was budget driven, rather than for cause. The First Circuit rejected this argument, noting that the record indicated that “performance factors played a role.”[5] Nonetheless, the First Circuit upheld the dismissal of Whalen’s claims against the individual defendants based on qualified immunity,[6] and against the Trial Court based on the Eleventh Amendment.[7]
Here, Whalen’s complaint sets forth several theories of relief, including causes of action based in negligence, intentional tort, breach of contract and/or violation of statutes, and violations of due process. The complaint also brings a claim on behalf of Laurie *194 Whalen for loss of consortium. The defendants have moved to dismiss, arguing, inter alia, that Whalen’s claims are either: (1) precluded by Whalen I; (2) barred by governmental immunity; or (3) fail to comply with the “presentment” requirements of the Massachusetts Tort Claims Act, G.L.c. 258, §4. The defendants also contend that Laurie Whalen’s claim for loss of consortium must be dismissed because she cannot meet the threshold requirement for such claims: a viable underlying tort on the part of the claimant’s spouse.
DISCUSSION
I.Claims Against the Individual Defendants in Their Individual Capacities
Whalen has brought claims against the individual defendants in their individual capacities based in negligence (Count 10), intentional tort (Counts 3, 4, and 9), breach of contract and/or statutory violation (Counts 5, 6, and 8), and violation of due process and civil rights (Counts 1 and 7).[8] The defendants argue that because each of these claims against the individual defendants in their individual capacities was raised, or could have been raised, in Whalen I, they are precluded under the doctrine of res judicata.
“(I]f a set of facts gives rise to a claim based on both State and Federal law, and the [claimant] brings the action in a Federal court which had ‘pendent’jurisdiction to hear the State claim, he may not subsequently assert the State ground in a State court action.” Mancuso v. Kinchla, 60 Mass.App.Ct. 558, 565 (2004), quoting Anderson v. Phoenix Inv. Counsel of Boston, Inc., 387 Mass. 444, 450 (1982).[9] Pendent jurisdiction, now a species of “supplemental jurisdiction” under 28 U.S.C. §1367, permits a plaintiff who properly invokes the jurisdiction of a federal court to join sufficiently related state claims. Mancuso, 60 Mass.App.Ct. at 565-66. “To determine whether sufficient subject matter identity exists between an earlier and a later suit, federal courts employ a transactional approach.” Id. at 570, quoting Gonzalez v. Banco Cent Corp., 27 F.3d 751, 758 (1st Cir. 1994).[10] “[F]inal judgment on the merits of an action bars the parties or their privies from relitigating claims that were or could have been raised in that action.” Mancuso, 60 Mass.App.Ct. at 567, citing Porn v. National Grange Mut Inc. Co., 93 F.3d 31, 34 (1st Cir. 1996).
The elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the two suits. Porn, 93 F.3d at 34.
The decision by the First Circuit in Whalen I was a final judgment with regard to the individual defendants in their individual capacities, who were held to be protected by qualified immunity.[11] Moreover, because all of Whalen’s instant claims against the individual defendants in their individual capacities arise out of the same transaction or “nucleus of operative facts” as those that were or could have been adjudicated in Whalen I — Le., the circumstances surrounding Whalen’s layoff — there is sufficient subject matter identity between the two suits.[12] Finally, because all of the defendants named in the instant action were defendants in Whalen I, there is sufficient identity between the parties in the two suits.
For these reasons, Whalen’s instant claims against the individual defendants in their individual capacities for violation of his rights to due process are precluded because they were already raised in Whalen I. Moreover, Whalen’s claims against the individual defendants in their individual capacities based in negligence, intentional tort, breach of contract and/or statutory violation, and violation of civil rights are also precluded because they could, and therefore should, have been raised in Whalen I.
II.Laurie Whalen’s Claims for Loss of Consortium
While Laurie Whalen’s claim for loss of consortium (Count XI) is not precluded by Whalen I because such claims are independent of a spouse’s cause of action, it nonetheless fails because a claim for loss of consortium has as a prerequisite that the injured spouse have a viable tort-based claim. See Sena v. Commonwealth, 417 Mass. 250, 264 (1994). For the reasons described herein, Whalen does not have a viable tort-based claim against the defendants. Thus, Laurie Whalen’s claim for loss of consortium must be dismissed.
III.Tort Claims Against the Commonwealth 1. Intentional Torts
Whalen has brought claims based in intentional tort against the Commonwealth and the individual defendants in their official capacities (Counts 3,4, and 9). The defendants argue that the Commonwealth is absolutely immune from liability for intentional torts because of its sovereign immunity.
Intentional torts are expressly exempted from the waiver of the Commonwealth’s sovereign immunity under the Massachusetts Tort Claims Act, G.L.c. 258 (‘Tort Claims Act”). See Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 596 (2001), citing G.L.c. 258, §10 (c); see also Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 285 (1985) (“Consistent with the common law principles of governmental immunity which preceded the Massachusetts Tort Claims Act, we conclude that public employers retain their immunity from suits arising from intentional torts”). Moreover, the law treats an action against a State official in his official capacity as an action against the official’s office and hence the State. See O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 n.13 (1993) (to avoid a State’s sovereign immunity, a plaintiff must sue the State official in his individual capacity). As the Commonwealth and the individual defendants in their official capacities are absolutely immune from these *195 suits, the claims against these defendants based in intentional tort should be dismissed.
2. Negligence
Whalen has brought a claim for negligent infliction of emotional distress against the Commonwealth and the individual defendants in their official capacities (Count 10). The defendants contend that this claim should be dismissed because of Whalen’s failure to comply with the presentment requirements of §4 of the Tort Claims Act.
The Tort Claims Act provides the exclusive damage remedy for injury to persons arising out of negligent or wrongful acts of public employees. Section 2 of the Tort Claims Act provides that a public employer is liable “for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment.” G.L.c. 258, §2. A condition precedent to bringing a suit under the Tort Claims Act is the presentment of the claim “in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose.” Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 283 (1985), quoting G.L.c. 258, §4. “(T]he purpose of the presentment requirement is to allow the public employer to investigate any claim in full and to ‘arbitrate, compromise or settle’ any such claim as it sees fit.” Holihan v. Medford, 394 Mass. 186, 189 (1985), quoting G.L.c. 258, §5. Only if the claim is denied or the executive officer fails to settle, arbitrate, or compromise the claim within six months, may the claimant file suit. Spring, 394 Mass. at 283, citing G.L.c. 258, §4.
Here, Whalen contends that he met the presentment requirements of G.L.c. 258, §4 when he filed suit in 2002. Yet the requirements of §4 are clear on their face, and their plain meaning controls. See Holihan, 394 Mass. at 189. The statute requires presentment to the official with the capacity to negotiate or settle the claim. Id. To construe the filing of a lawsuit as a proper presentment would be to completely abrogate the purpose behind §4 of fostering compromises or settlements.[13] For these reasons, Whalen has failed to comply with the presentment requirements of G.L.c. 258, §4. Therefore the negligence-based claims against the Commonwealth and the individual defendants in their official capacities must be dismissed.
IV. Claims Against the Commonwealth for Violations of Due Process
Whalen has brought claims against the Commonwealth and the individual defendants in their official capacities for the violation of his rights to due process under the constitutions of the United States and the Commonwealth. While Whalen’s complaint does not cite a statute that would provide a civil remedy for a violation of due process, the Court will analyze Whalen’s due process claim under 42 U.S.C. §1983, the Federal civil rights statute, and G.L.c. 12, §§11H, 111, the Massachusetts Civil Rights Act.
1. Section 1983
Section 1983 permits a civil suit against a “person,” acting under color of law, who deprives another of any “rights, privileges, or immunities secured by the Constitution and laws.”[14] 42 U.S.C. §1983. States, however, are not “persons” within the meaning of §1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 71 (1989) (noting that Congress, in passing §1983, did not intend to disturb the States’ immunity from suit under the Eleventh Amendment). Moreover, “[a] suit against an official in his or her official capacity is not a suit against the official but rather against the official’s office ... As such, it is no different from a suit against the State itself.” Id. at 71. For these reasons, Whalen may not bring a claim against the Commonwealth or the individual defendants in their official capacities for violation of his federal rights to due process under §1983.[15]
2. The Massachusetts Civil Rights Act
Under the Massachusetts Civil Rights Act (“MCRA”), “persons” may be liable for injunctive or monetary relief if they interfere with the exercise or enjoyment by any other person of rights secured by the constitutions or laws of the United States or the Commonwealth. G.L.c. 12, §§11H, 111. The Commonwealth, however, is not a “person” covered by the MCRA. See Howcroft, 51 Mass.App.Ct. at 591-92. Nor are individual government officials in their official capacities “persons” under the MCRA, although such officials may be sued under the MCRA in their individual capacities if they violate a person’s rights “by means of ‘threats, intimidation, or coercion.’ ” Id. at 594, quoting Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996). For these reasons, Whalen may not bring a claim against the Commonwealth or the individual defendants in their official capacities under the MCRA.
V. Claims Against the Commonwealth for Breach of Contract and/or Violation of Statutory Rights
Finally, Whalen has brought claims based in breach of contract and/or violation of statutory rights, arguing that his selection for layoff and his eventual termination was in violation of G.L.c. 218, §10 and G.L.c. 211B, §8 (Counts 1, 5, 6, and 8). In his complaint, Whalen occasionally refers to these rights in contractual terms, alleging, for example, that the defendants “breached [his] employment agreement with the Commonwealth and the Trial Court.” Given the absence of a written employment agreement, Whalen bases his “contract” claims on what he contends is his right to “employment protection arisfing] out of a statutory grant of tenure.” As it does not appear to the court that the characterization of these claims as contract-or statute-based is determinative, the court *196 will, for the sake of consistency, refer to these claims as alleged statutoiy violations.
As an initial matter, it is important to note that the claims against the Commonwealth are not precluded by Whalen’s prior federal action. In Whalen I, the First Circuit dismissed the claims against the Trial Court based on the Eleventh Amendment, which generally bars suits in federal court against unconsenting states. Whalen I, 397 F.3d at 30. Because the Eleventh Amendment served as a “jurisdictional bar” to Whalen’s claims against the Trial Court in federal court, those claims were not decided “on the merits,” and therefore are not precluded in the instant action. See Edelman v. Jordan, 415 U.S. 651, 677-78 (1974), citing Ford Co. v. Dept. of Treasury, 323 U.S. 459 (1945) (the Eleventh Amendment “sets forth an explicit limitation on federal judicial power”).
The defendants argue that Whalen’s statute-based claims against the Commonwealth must be dismissed because neither G.L.c. 218, §10 nor G.L.c. 211B, §8 expressly or impliedly waives the Commonwealth’s sovereign immunity. “The Commonwealth cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed . . . [by] statute.” Woodbridge v. Worcester State Hospital, 384 Mass. 38, 42 (1981). Sovereign “immunity is still in effect unless consent to suit has been ‘expressed by the terms of a statute, or appears by necessary implication from them.’ ” DeRoche v. Mass. Comm. Against Discrimination, No. 09619 (Sup.Jud.Ct. June 12, 2006), quoting Bain v. Springfield, 424 Mass. 758, 763 (1997).
The defendants are correct in their assertion that nothing in G.L.c. 218, §10 or G.L.c. 211B, §8 can be read as expressly waiving the Commonwealth’s sovereign immunity. Therefore, Whalen can only bring statute-based claims against the Commonwealth if such a waiver can be necessarily implied by G.L.c. 218, § 10 or G.L.C. 211B, §8.
The Massachusetts case most analogous on the question of when a waiver of sovereign immunity can be implied by “necessary implication” is Woodbridge v. Worcester State Hospital 384 Mass. 38 (1981). In Woodbridge, the Supreme Judicial Court (“SJC”) was faced with the question of whether G.L.c. 123, §23, which enunciates certain rights of patients in the care of the Department of Mental Health and does not expressly waive sovereign immunity, permits a suit against the Commonwealth for the violation of those rights “by necessary implication.” Woodbridge, 384 Mass. at 39-40. Woodbridge had argued that the Legislature’s use of the word “rights” in §23 elevated the regulatory standards of care to the status of legal rights, and, moreover, that unless their denial was redressable in damages against the State, such rights would be rendered “illusory.” Id. at 41. The SJC, however, held that the Legislature’s use of the word “right” represented “aspiration and encouragement,” rather than an intent to create a “formal system of actionable guarantees.” Id. at 42. In so ruling, the SJC relied on the language of §23, which notably refers to “rights” and “privileges” interchangeably, “and provides that the rights enumerated may be denied for good cause stated in writing.” Id. The SJC also pointed out that a related provision of the statute empowers the Department of Mental Health to establish procedures and standards of care, but “expressly conditions that grant of authority on the availability of funding.” Id. The SJC concluded that “[i]n requiring that such standards be the highest practicable, we think that the Legislature did not intend to subject the State to liability in damages for any failure to attain them.” Id. at 42-43.
Here, Whalen’s argument on this point is similar to the theoiy rejected by the SJC in Woodbridge; that is, unless he is permitted to sue the Commonwealth for violating his rights under G.L.c. 218, §10 and G.L.c. 211B, §8, the protections offered by those statutes are not capable of meaningful enforcement. Nevertheless, for several reasons, the similarity between Whalen’s argument and the theory rejected by the SJC in Woodbridge is not determinative on the issue of whether a waiver of sovereign immunity is necessarily implied by G.L.c. 218, §10 and G.L.c. 211B, §8. While the language of G.L.c. 123, §23 (addressing the “rights” of mental health patients) was deemed merely aspirational by the SJC in Woodbridge, there is little that could be construed as aspirational in the procedural protections outlined in G.L.c. 218, §10 and G.L.c. 211B, §8.[16] Moreover, the purpose of the “for cause” language in G.L.c. 123, §23 (at issue in Woodbridge) is different than the purpose of the “for cause” language in G.L.c. 211B, §8 (at issue here). While the former statute provides for the denial of aspirational privileges “for good cause,” the latter establishes a system of substantive and procedural protections by providing that an assistant clerk with three years of service may only be removed “for cause” by the appointing authority and after the approval of the Advisory Committee on Personnel Standards.
The defendants contend that a person injured by a violation of G.L.c. 218, §10 and G.L.c. 211B, §8 has remedies available against the relevant governmental officials in their individual capacities under § 1983 and the MCRA. Although such causes of action are not available to Whalen because they are precluded by Whalen I, the defendants argue that the existence of remedies under the two civil rights statutes demonstrates that the rights provided by G.L.c. 218, § 10 and G.L.c. 211B, §8 are capable of vindication.
While, as noted above, §1983 does not permit suit against a State official acting in his official capacity, such officials may be subject to liability in their individual capacities under the statute. To recover against a State official in his individual capacity under §1983, *197 a claimant must establish both a denial of rights secured by the Constitution of the United States or federal law, and that the official is not entitled to qualified immunity. See Howcroft, 51 Mass.App.Ct. at 585 n. 17, 595. If the alleged violation did not implicate a right secured by the Constitution or by federal law — e.g., the right was secured by state statute — a claim would not lie under §1983. Id. at 585 n.17. Moreover, if the federal right allegedly infringed was not “clearly established,” the official would be entitled to qualified immunily and would not be subject to liability under § 1983. Id. at 595.
Under the MCRA, state officials in their individual capacities may be subject to liability if it can be shown that they interfered with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or Massachusetts “by means of threats, intimidation, or coercion.” See id. at 593-94 (internal quotations omitted). Therefore, unlike §1983, the MCRA permits suit against a State official acting in his individual capacity for a violation of state law. However, in addition to proving that the state or federal right was “clearly established” (because qualified immunity applies under the MCRA), liability under the MCRA requires the additional step of showing that the violation occurred by means of “threats, intimidation, or coercion.” Id.
Whalen argues, convincingly, that the above-described obstacles to suit under §1983 and the MCRA call into question the defendants’ argument that such remedies make the rights contained in G.L.c. 218, §10 and G.L.c. 21 IB, §8 meaningful and enforceable. Indeed, a hypothetical plaintiff in Whalen’s situation would have to show both a violation of law and that the official was not protected by qualified immunity. In addition, under the MCRA the plaintiff would have to show that the violation occurred by means of “threats, intimidation, or coercion” — a level of culpability requiring the violation by a government official to be both intentional and in bad faith. Cf. Howcroft, 51 Mass.App.Ct. at 594.[17] Legal redress for the Commonwealth’s violation of the statutory rights at issue would be difficult, if not nearly impossible.
The question, then, is whether the Legislature intended that an assistant clerk appointed under G.L.c. 218, §10 has no legal recourse, apart from civil rights claims, if the Commonwealth terminates him without “good cause” and without the approval of the Advisory Committee on Personnel Standards. In light of the provisions of G.L.c. 218, §10 and G.L.c. 211B, §8, together with the fact that, for the reasons described above, the remedies available under §1983 and the MCRA would often be unmeaningful to an aggrieved plaintiff in Whalen’s situation, this court concludes that the Legislature intended that the rights described in G.L.c. 218, §10 and G.L.c. 211B, §8 imply a waiver of the Commonwealth’s sovereign immunity. An aggrieved employee, therefore, may bring a lawsuit to enforce those statutory rights.
V. Conclusion
The final judgment in Whalen’s prior federal court action, together with the principles of claim preclusion, qualified immunily, and sovereign immunity, make it clear that the only viable claim remaining is for the Commonwealth’s[18] alleged violations of Whalen’s rights under G.L.c. 218, §10 and G.L.c. 211B, §8.[19]
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motion to Dismiss is DENIED with respect to the claims against the Commonwealth alleging violations of rights under G.L.c. 218, §10 and G.L.c. 21 IB, §8, and ALLOWED as to all defendants with respect to all other claims.

See Jarosz v. Palmer, 436 Mass. 526, 530 (2002), citing Brookline v. Goldstein, 388 Mass. 443, 447 (1983) (permitting a trial judge to take judicial notice of the records of other courts in a related action when deciding a motion to dismiss).

Prior to 1978, G.L.c. 218, § 10 had provided that assistant clerks who “held appointment for three consecutive years, shall hold office during good behavior . . . and may be removed ... for cause shown, subject, however to a review by a justice of the superior court.” See 1974 Mass. Acts. c. 148, §1.

Among the factors cited by the First Circuit in arriving at this conclusion was the fact that, when additional funds made it possible to retain one of the three clerks selected for termination, Whalen was passed over in favor of someone with considerably less experience who lacked sufficient tenure — three years — to claim a property interest in his job. Whalen I, 397 F.3d at 26.

The court noted that there was “at least some merit to” the defendants’ argument that the procedural protections outlined in G.L.c. 211B, §8 for a removal “for cause” were inapplicable because Whalen was subject to layoff for budgetary reasons. Whalen I, 397 F.3d at 27. In fact, the U.S. District Court certified that issue to the Massachusetts Supreme Judicial Court, but the case was dismissed as moot before an answer was received. Id.

The Eleventh Amendment to the United States Constitution bars suits in federal court against unconsenting states. See Whalen I, 397 F.3d at 28.

The complaint also purports to bring a claim against the individual defendants for “aiding and abetting” the Commonwealth and Trial Court in violating Whalen’s rights (Count 2). Civil claims for aiding and abetting, however, are a form of civil conspiracy, and therefore require an underlying tort by a third party. See Norman v. Brown, Todd & Heybum, 693 F.Sup. 1259, 1264 (D.Mass. 1988) (“[ajiding and abetting is one variation of joint tort liability”). For the reasons explained in section III, infra, the intentional tort claims against the Commonwealth and the Trial Court are barred by sovereign immunity, and the claims based in negligence are barred by Whalen’s failure to make presentment pursuant to G.L.c. 258, §4. Therefore, as there is no viable underlying tort on the part of the Commonwealth or Trial Court, Whalen’s claim against *198 the individual defendants for “aiding and abetting” must be dismissed.

“The exception to this rule is that if the Federal court in the first action would clearly not have had jurisdiction to hear the State claim or, if having jurisdiction, would clearly have declined to exercise it as a matter of discretion, then a second action in a State court should not be precluded.” Mancuso, 60 Mass.App.Ct. at 566 (emphasis in original). This exception does not apply here.

“When a State court is faced with the issue of determining the preclusive effect of a Federal court’s judgment, it is the Federal law of res judicata which must be examined.” Mancuso, 60 Mass. at 564, quoting Anderson, 387 Mass. at 449.

Although the stage of litigation was not explicitly stated in the decision, Whalen I refers to materials outside the pleadings, including an affidavit. Therefore, the case appears to have been decided at the summary judgment stage. See Wright Machine Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 693 (1974) (reasoning that when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, the judgment will operate as res judicata).

It is worth noting that the same principles of federal law involved in Whalen I — due process and qualified immunity— are at issue here, and that their analysis under Massachusetts law is the same as under federal law. Moreover, no contract has been alleged between Whalen and the individual defendants in their individual capacities.

The fact that Whalen contends that the “Defendants cannot state with a straight face that they [were] surprised” by the negligence claim does not excuse his failure to comply with the presentment requirements. See Weaver v. Commonwealth, 387 Mass. 43, 49 (1982) (“We cannot read into c. 258 an affirmative requirement that prejudice must be shown before the Commonwealth can rely on failure of presentment”).

Section 1983 provides in pertinent part that “[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...”

While §1983 permits claims against government officials in their individual capacities, here such a claim would be precluded for the reasons explained in section I, supra.

See, e.g., G.L.c. 218, § 10 (“Assistant clerks who were appointed under authority of this section . . . and who have held appointment for three consecutive years . . . shall hold office during good behavior . . .”) (emphasis added); G.L.c. 211B, §8 (“Every removal of an officer or employee whose appointment was subject to the provisions of this section shall be reviewed by the [advisory] committee, and no such removal shall be final until approved by the committee”) (emphasis added).

In Howcroft the Appeals Court denied summary judgment on a claim against several police officers in their individual capacities brought under the MCRA. Howcroft, 51 Mass.App.Ct. at 594-95. In retaliation for speaking out on the police department’s failure to comply with a state statute prohibiting smoking in public buildings, the individual defendants subjected Howcroft, whose severe respiratory problems were exacerbated by second-hand smoke, to a pattern of harassment. Id. at 594. The Appeals Court concluded that Howcroft’s claim, which alleged that the defendants deliberately disregarded State law, ordered him to “shut up,” blew smoke in his face, encouraged other officers to smoke in his presence, and reassigned him to the station house to increase his exposure to smoke, presented a triable issue as to whether the defendants’ actions amounted to prohibited intimidation under the MCRA. Id.

As the law treats suits against an official in his or her official capacity not as a suit against the official but rather as a suit against the official’s office, nothing is added to Whalen’s action by his claims against the individual defendants in their official capacities. See O'Malley, 415 Mass. at 141 n. 13, citing Will 491 U.S. at 71 (referring to such as suit as “no different from a suit against the State itself’).

The scope of equitable relief and monetary relief, if any, to be accorded Whalen for the alleged violation of his rights under G.L.c. 218, § 10 and G.L.c. 211B, §8 is not before the court in this motion.